707 So.2d 345 (1998)
Carlos ZELLARS, Appellant,
v.
STATE of Florida, Appellee.
No. 97-364.
District Court of Appeal of Florida, Fifth District.
January 9, 1998.
Order Granting Rehearing March 20, 1998.
James B. Gibson, Public Defender, and Nancy Ryan, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Robin A. Compton, Assistant Attorney General, Daytona Beach, for Appellee.
W. SHARP, Judge.
Zellars appeals from his conviction for attempted aggravated battery,[1] after a jury trial, and his departure sentence upward from the guidelines of 45 months in prison. We affirm the conviction but remand for resentencing.
Zellars claims that the trial judge erred by not granting his motion for judgment of acquittal at the close of the state's *346 case and at the conclusion of the defense case. He argues that there was no evidence or insufficient evidence to prove that he intended to cause the victim, Tamika Roland, great bodily harm, permanent disability or permanent disfigurement as required by section 784.045(1)(a)1., Florida Statutes. Although this is a close case, we think the evidence was sufficient to allow the trial judge to submit it to the jury.[2]
The evidence presented during the state's case viewed in a manner to uphold the trial judge's decision,[3] was that Zellars commenced the altercation with Tamika Roland by grabbing her bottom three times, despite her protests and threat to throw her soda on him if he did not stop. They were at an intersection where a number of other teenagers were hanging out. When he did not stop, Tomika threw the soda and jumped into a friend's car.
Zellars jumped into the car after her and started choking her with his hands. He was 23-years-old at the time, and she was 15. She testified he had his hands on her neck from two to three minutes. She was unable to push him off and could not yell out and scream because she could not breathe. When the other teenagers noticed what was happening, one ran over to another male, and urged him to intervene. He did so, and pushed Zellars away from Tamika.
Then the two men got into a fight in the car and outside, resulting in the rear window being kicked out. As soon as possible, the driver sped off with Tamika in the front passenger seat. She drove to Tamika's aunt's house. At that point, Tamika testified she was unable to move. Fearful that her neck might have been damaged, they put her on top of the car and called for emergency help. The ambulance driver and paramedics strapped her to a board and took her to an emergency room for x-rays and further treatment.
The emergency room doctor who treated Tamika testified her neck had not been broken, but she had suffered a bruised neck. He also testified that it is possible for a strong person to break a victim's neck by choking, or to crush the victim's trachea or larynx. These injuries could be serious and life-threatening.
Tamika's mother also testified. She said the defendant had spoken to her on the telephone and asked her to drop the charges. She said he admitted choking Tamika. He also apologized.
Zellars testified for the defense. He denied grabbing Tamika's bottom. He said he merely tapped her on her leg in a playful manner. He claimed she threw the soda at him and he grabbed the soda and threw it back on her. Then he was grabbed from behind by someone and beaten up. He denied he had ever put his hands around her neck, and that he hurt Tamika in any way. He stated he had no intent to cause Tamika great bodily harm. He also denied he made any telephone call to Tamika's mother in which he admitted any wrong-doing.
At the conclusion of the trial, the jury could have (and did) choose to disbelieve Zellars' protestations of innocence, thereby establishing grounds for the jury's finding on intent to cause the victim great bodily harm, permanent disability or permanent disfigurement. At the conclusion of the state's case, proof of Zellars' intent was circumstantial, and stemmed from the other witnesses' testimony about his actions. He was much larger and older than the victim; the victim was strangled for three minutes and could not cry out or breathe; and he was only stopped from continuing to strangle her by the intervention of another man. We think the question of his intent in this case was properly resolvable by the jury. See State v. Gee, 624 So.2d 284 (Fla. 2d DCA 1993); State v. Stenza, *347 453 So.2d 169 (Fla. 2d DCA 1984); Fletcher v. State, 472 So.2d 537 (Fla. 5 th DCA 1985).
However, we reverse the sentence imposed in this case and remand for resentencing under the guidelines. We do not think that the record supports the reasons given by the trial judge for an upward departure sentence. Zellars' prior conviction for aggravated battery, coupled with this offense, does not create an escalating pattern of criminal conduct. Glenn v. State, 623 So.2d 596 (Fla. 5th DCA 1993); Browning v. State, 625 So.2d 960 (Fla. 5th DCA 1993). Further, the record fails to establish the times Zellars committed other prior offenses (grand theft auto and unlawful possession of a controlled substanceboth non-violent offenses) in relation to the battery offenses.
AFFIRMED in part; REVERSED in part; REMANDED for resentencing.
COBB, J., concurs specially with opinion.
HARRIS, J., dissents with opinion.
COBB, Judge, concurring specially.
I concur with the majority opinion that the conviction in this case should be affirmed. I do so, however, with some misgivings because it seems to me that we may be opening a prosecutorial Pandora's box that can plague us in the future with the concept of criminal attempt.
In this case, there was available to the state from the outset a simple prosecution for battery against Zellars. Based upon the statutory criteria of section 784.045, Florida Statutes (1995), the charge of aggravated battery was not availablethere was no great bodily harm, permanent disability or permanent disfigurement inflicted, no deadly weapon was utilized, and the victim was not pregnant. But by ignoring these objective facts relating to the battery, which are contemplated by the statutory law, and, instead, concentrating on the subjective intent of the offender, the state has succeeded in elevating this apparent misdemeanor into the third degree felony of attempted aggravated battery[1] and obtaining a conviction therefor. By charging an attempted aggravated battery, the state has shifted the focus of the inquiry away from the statutory factors and directed it to Zellars' intent, which can only be induced from circumstantial evidence. This gives rise to much more complex and enigmatic considerations. See, e.g., State v. Law, 559 So.2d 187 (Fla.1989).
In this case there was a reasonable hypothesis of the innocence of Zellars in respect to the felony offense of attempted aggravated battery: i.e., in a moment of anger in response to an offensive action by the victim he choked her without intending to inflict great bodily harm, permanent disability or permanent disfigurementand, indeed, none of those consequences ensued.[2] Given the reasonableness of that hypothesis, it became the burden of the state at trial to produce competent, substantial evidence to contradict it, or suffer a judgment of acquittal. Law at 189. The state struggled with that burden in this case. It introduced no evidence of any threats at any time by Zellars to kill or seriously injure the victim, nor any admissions by him that such was ever his intent. The mere fact of the choking itself is no more proof of intent to inflict great bodily harm than it is proof of intent to commit some bodily harm. Indeed, the words from the offender during the incident, which were introduced into evidence by the state, seem more indicative of the latter intent than of the former.
The argument of the state is summarized by two sentences in its appellate brief:
When someone gets choked around the neck area, if the perpetrator is strong enough, it is possible to break the neck, crush the larynx, or crush the trachea. Any of these injuries are serious and can lead to death.
In other words, anything is possible. It is an obvious fact that death can result from choking; *348 that could be judicially noted without any medical testimony at all. But the state's argument that that possibility alone establishes a prima facie case of attempted aggravated battery leads down a slippery slope. It would logically follow that a thief who steals less than $300 (ostensibly petit theft) may be prosecuted for attempted grand theft in the first degree (a second degree felony) on the theory that had more than $10,000 been available for the taking he obviously would have taken it. A late punch to the head by a boxer after the bell can become the basis for a charge of attempted homicide since medical testimony is readily available that death can result from a blow to the head. Once upon that slide, there is very little to restrain an imaginative prosecutor in the filing of charges based upon the concept of attempt. It is interesting to note the case of Velasquez v. State, 654 So.2d 1227 (Fla. 2d DCA 1995), wherein the state elevated counts of aggravated assault into counts of attempted first degree murder, ultimately resulting in the defendant's acquittal.
Nevertheless, I have concurred with upholding the conviction in this case because of one factor, and that is the state's evidence that Zellars did not voluntarily release the victim but retained his grip for some two to three minutes until physically forced away by an intervening third party, with whom he then engaged in a fight. That factor sufficiently contradicts Zellars' hypothesis to create a jury issue pursuant to Law.
I also concur with Judge Sharp that the upward departure sentence must be reversed.
HARRIS, Judge, dissenting.
I agree entirely with Judge Cobb's concerns but not his result.
The issue in this case is whether the State presented sufficient evidence to send the charge of attempted aggravated battery to the jury. Because I believe the court erred in not granting a judgment of acquittal on the charged offense, I would reverse.
After the victim threw a soda at Carlos Zellars, he placed his hands around her neck and choked her. He held his hands around her throat for two or three minutes until a bystander pushed him away from the victim. The State, in charging Zellars with attempted aggravated battery, alleged in the information that Zellars "knowingly attempted to cause [the victim] to suffer great bodily harm, permanent disability or permanent disfigurement." The issue before us is whether there was sufficient circumstantial evidence of this greater intent to send the issue to the jury.
The State concedes in its brief that "[i]n the instant case, there was no evidence of great bodily harm, permanent disability or permanent disfigurement." To justify the charge of attempted aggravated battery, the State relied on the testimony of Dr. Doan to the effect that when someone gets choked around the neck area, if the perpetrator is strong enough, it is possible to break the neck, crush the larynx, or crush the trachea. Any of these injuries are serious and, according to Dr. Doan's testimony, can lead to death. It appears, if the State's position that the possibility of great injury can substitute for proof of intent to inflict great injury is correct, then it could have charged attempted manslaughter as well as attempted aggravated battery. See Morton v. State, 701 So.2d 644 (Fla. 5th DCA 1997).
There are two problems with the State's position. First, there is an evidentiary gap in the State's case. Unless the commission of an act that constitutes simple battery is evidence of a specific intent to cause great bodily harm (as alleged in the information), then there was no evidence that Zellars intended to inflict any more injury than he did.[1] It appears that had he intended to, Zellars could have inflicted the more serious injuries alluded to by the State within the two to three minutes that he had his hands around the victim's throat. The fact that more serious injuries were possible does not equate with evidence of an intent to inflict them. It is at least as possible that Zellars *349 was merely trying to scare the victim and cause her some discomfort in order to discourage her from throwing something on him in the future as it is that he intended to do her great bodily injury. The only circumstantial evidence of this greater intent is that someone pushed Zellars away from the victim after two to three minutes. But it is not the length of time that a battery consumes that makes it "aggravated." If someone knocks another down and sits on him five or thirty minutes, it is merely a continuing simple battery unless great bodily injury occurs. If Zellars had choked the victim another minute or two it would still be simple battery if no additional injury occurred. The fact that someone pushed Zellars away is not inconsistent with his position that he never intended to seriously injure the victim.
The fact that Zellars was pushed away from the victim is consistent with all and inconsistent with none of the following theories of the case: (1) Zellars intended to continue to "choke" the victim with the same limited pressure that proved incapable of causing serious injury in order that the fear and discomfort caused by his action would discourage the victim from again throwing something on him, (Zellers' theory); (2) Zellars intended to continue to choke the victim until she suffered serious injury which would prevent her from throwing anything on him in the future; or (3) Zellars intended to continue to choke the victim until she died in which case we should be considering an attempted homicide charge instead of an attempted aggravated battery. Although any of these intents is possible, Zellars' failure to release the victim within a particular time period simply is not inconsistent with Zellars' theory of the case. This is not a multiple choice examination in which the jury is free to choose the answer it prefers. This is a circumstantial evidence case in which the circumstantial evidence must be inconsistent with the defendant's theory of the case. On a motion for judgment of acquittal, this is a judge issue. In my view, the intervention was not inconsistent with Zellars' claim that he merely wanted to teach the victim a lesson and not do her serious injury. The fact that he was so much larger than the victim and had his hands around her neck for two to three minutes and caused her no serious injury is further consistent with his theory of the case. A judgment of acquittal on the charge of aggravated battery should have been granted.
The second problem is more conceptual. Since practically every battery has the potential of causing serious injury and even possibly death, then if the State's position is accepted and the intent to cause a greater injury than that inflicted can be inferred from the commission of the lesser offense, almost every battery can be charged as an attempted aggravated battery or an attempted voluntary manslaughter. And even a simple assault can be charged as an attempted aggravated battery. Surely that was not the intent of the legislature in enacting the offense of "attempt."

ON MOTION FOR REHEARING/CERTIFICATION
HARRIS, Judge.
We grant rehearing solely for the purpose of certifying the following question as a question of great public importance. In all other respects, our previous opinion remains the same.
HAS THE LEGISLATURE AUTHORIZED A CONVICTION FOR ATTEMPT TO COMMIT AN AGGRAVATED OFFENSE WHERE THE AGGRAVATING FACTOR DOES NOT RESULT AND WHERE THE ATTEMPTED AGGRAVATED OFFENSE IS OF A GREATER DEGREE THAN THE CORE OFFENSE?
COBB and W. SHARP, JJ., concur.
NOTES
[1] § 784.045(1)(a)1, Fla. Stat. (1995).
[2] See Gudinas v. State, 693 So.2d 953, 962 (Fla. 1997), cert. denied, ___ U.S.___, 118 S.Ct. 345, 139 L.Ed.2d 267 (1997); Barwick v. State, 660 So.2d 685 (Fla.1995); DeAngelo v. State, 616 So.2d 440 (Fla.1993), cert. denied, 516 U.S. 1097, 116 S.Ct. 823, 133 L.Ed.2d 766 (1996); State v. Law, 559 So.2d 187 (Fla.1989); Lynch v. State, 293 So.2d 44, 45 (Fla. 1974); T.S. v. State, 675 So.2d 196, 198 (Fla. 4th DCA 1996); K.O. v. State, 673 So.2d 47, 48 (Fla. 4th DCA 1995); A.B.G. v. State, 586 So.2d 445, 446 (Fla. 1st DCA 1991).
[3] See Spinkellink v. State, 313 So.2d 666 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976).
[1] The existence of the crime of attempted aggravated battery has been recognized by the Florida Supreme Court. See Pitts v. State, 425 So.2d 542, 543 (Fla. 1983).
[2] This was the hypothesis of innocence argued by defense counsel in support of his motion for judgment of acquittal at the conclusion of the state's case.
[1] Even the victim did not testify that Zellars intended to do her serious harm, the only statement that she claims was made by Zellars during the incident was: "He was telling me don't try him no more and he ain't nothing to play with."