730 So.2d 1264 (1998)
Ted HERRING, Appellant,
v.
STATE of Florida, Appellee.
No. 89937.
Supreme Court of Florida.
September 24, 1998.
Rehearing Denied January 14, 1999.
Leon H. Handley of Gurney & Handley, P.A., Orlando, Jon M. Wilson and John R. Hamilton of Foley & Lardner, Orlando, and Jeremy G. Epstein, Alan S. Goudiss, James R. Warnot, Jr., Kathryn Tabner, Daniel Schimmel, and Steven M. Davidoff of Shearman *1265 & Sterling, New York City, for Appellant.
Robert A. Butterworth, Attorney General, and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, for Appellee.
PER CURIAM.
Ted Herring, a prisoner under sentence of death, appeals the trial court's denial of his motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850. The issue in this appeal is whether Herring's public defender had an actual conflict of interest that adversely affected his performance. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we affirm the ruling of the trial court.
On May 29, 1981, a convenience store in Daytona Beach was robbed and the store clerk was found dead from two gunshot wounds. A hold-up note with a fingerprint on it was recovered from the store, and the fingerprint was subsequently determined to be that of Ted Herring. Herring was arrested and interrogated regarding the crimes. Herring waived his Miranda rights and made statements to police officers William Anderson, Dozell Varner, and Martin White. In his first statement to the officers, which was taped, Herring said that he went to the store with the intent to commit a robbery, but that prior to committing the crime a second man robbed the store and killed the clerk. In a second unrecorded statement made privately to Officer Varner, Herring confessed that he shot the clerk in the head and then, while the clerk was lying on the ground, shot the clerk a second time to eliminate him as a possible witness. In a final taped statement to the officers, Herring claimed that he robbed the store but accidentally shot the clerk twice after the clerk tried to grab his gun.
In February 1982, Herring was tried in Volusia County for armed robbery and first-degree murder. Herring was represented at the trial by two public defenders, Howard Pearl and Peyton Quarles. Pearl conducted the guilt phase of the trial and Quarles handled the penalty phase. Officer Varner testified at the trial regarding Harrison's unrecorded statement. At the time of his testimony, Officer Varner had received twenty-two oral reprimands for minor misconduct, one written reprimand for tardiness, and a one-day suspension for an accident involving a city vehicle. Officer Varner had also received eight commendations for his police work, including a commendation for the arrest of Ted Herring. Following the direct examination of Officer Varner, Pearl's cross-examination focused only on whether Herring received food and water during his interrogation. Pearl's cross-examinations of officers Anderson and White were also limited to the topics of food and rest.
Herring testified at trial that his first statement to the officers was accuratethat the robbery and murder were committed by a second gunman. Herring denied having a private conversation with Officer Varner and claimed that the second taped confession was coerced. In closing arguments, Pearl, consistent with Herring's testimony, told the jury that a second gunman robbed the store and killed the clerk. Pearl asked the jury to question the testimony of the interrogating officers. Pearl also informed the jury that "[policemen] do a very difficult and dangerous job of community service, and the policemen that you saw, Mr. Varner and Mr. Anderson, Mr. White, are all good policemen, good detectives."
Herring was convicted of first-degree murder and sentenced to death. In aggravation, the trial judge found that Herring (1) was previously convicted of an unrelated armed robbery; (2) committed the murder in the course of a robbery; (3) committed the murder for the purpose of avoiding arrest; and (4) committed the murder in a cold, calculated and premeditated manner (CCP). The judge's sentencing order reflects that the "avoiding arrest" aggravator was based on Officer Varner's testimony. In mitigation, the judge found that Herring was nineteen years of age at the time of the crime and that he had a difficult childhood and learning disabilities. This Court affirmed Herring's convictions and death sentence in Herring v. State, 446 So.2d 1049 (Fla.1984), but subsequently struck down the application of the *1266 CCP aggravator. Rogers v. State, 511 So.2d 526, 533 (Fla.1987). We rejected a motion to vacate Herring's death sentence that was predicated on our decision to recede from the application of the CCP aggravator. Herring v. State, 580 So.2d 135 (Fla.1991).
In his first rule 3.850 motion, Herring raised an ineffective-assistance-of-counsel claim based on deficient performance pursuant to Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The trial judge denied the motion and we affirmed. Herring v. State, 501 So.2d 1279 (Fla.1986).[1] Herring filed a second rule 3.850 motion and claimed, among other things, that he received ineffective assistance of counsel due to a conflict of interest between Pearl's status as a special deputy sheriff and Pearl's responsibilities owed to Herring.[2] The trial judge denied the motion, but this Court remanded the ineffectiveness issue for an evidentiary hearing. Herring v. State, 580 So.2d 135 (Fla.1991). Herring's hearing was consolidated with the hearings of eight other defendants who had raised similar "Howard Pearl claims."[3] The judge held that none of the defendants were adversely affected by Pearl's special deputy status. However, in Teffeteller v. Dugger (Herring v. State), 676 So.2d 369 (Fla.1996), this Court remanded four of the cases, including Herring's case, for individual evidentiary hearings solely on Pearl's status as a special deputy sheriff. As directed by this Court, a second evidentiary hearing was held, and Herring's motion was again denied. Herring now appeals the trial judge's ruling and raises the following issues: (1) whether the trial judge erred in finding that Pearl was not encumbered by an actual conflict of interest; (2) whether Pearl's failure to testify regarding a strategic rationale for his trial actions or omissions preludes the State from showing that his performance was not adversely affected by his conflict; and (3) whether the trial judge's findings of fact regarding Dr. Spitz's testimony are clearly erroneous.
In his first claim, Herring challenges the trial judge's denial of his ineffective-assistance-of-counsel claim. Herring argues that Pearl's personal interest in maintaining his special deputy sheriff status required him to remain in the good graces of law enforcement personnel. Herring asserts that Pearl's need to ingratiate himself to law enforcement officials was an actual conflict of interest with his obligations to Herring. Herring claims that Pearl's conflict of interest adversely affected his representation in the following ways: (1) adopting the incredible second gunman defense to the exclusion of the more plausible accidental shooting defense; (2) failing to aggressively cross-examine law enforcement witnesses, including failing to question Officer Varner regarding his disciplinary record; (3) bolstering the credibility of law enforcement witnesses; and (4) abandoning Herring during the penalty phase of the trial.
It must be understood at the outset that Herring cannot raise in this appeal an ineffectiveness claim based on deficient performance pursuant to Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). That claim has already been presented to and rejected by this Court, and Herring is procedurally barred from raising the claim in this appeal. We note that, had Pearl brought out Officer Varner's minor reprimands as Herring claims he should have, the door would have opened for the State to introduce Varner's commendations. In addition, Pearl's practice of not challenging the conduct of police officers in Volusia County absent hard evidence of misconduct was not unreasonable at the time Herring's case was tried in 1982. The alleged deficiency of Howard Pearl's performance is not the *1267 issue in this appeal. The only issue properly before this Court is whether Pearl had an actual conflict of interest that caused him to render ineffective assistance.
To prove an ineffectiveness claim premised on an alleged conflict of interest the defendant must "establish that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); Buenoano v. Dugger, 559 So.2d 1116, 1120 (Fla.1990). Our responsibility is first to determine whether an actual conflict existed, and then to determine whether the conflict adversely affected the lawyer's representation. A lawyer suffers from an actual conflict of interest when he or she "actively represent[s] conflicting interests." Cuyler, 446 U.S. at 350, 100 S.Ct. 1708. To demonstrate an actual conflict, the defendant must identify specific evidence in the record that suggests that his or her interests were impaired or compromised for the benefit of the lawyer or another party. See Buenoano v. Singletary, 74 F.3d 1078, 1086 n. 6 (11th Cir.1996); Porter v. Singletary, 14 F.3d 554, 560 (11th Cir.1994); Oliver v. Wainwright, 782 F.2d 1521, 1524-25 (11th Cir.1986). Without this factual showing of inconsistent interests, the conflict is merely possible or speculative, and, under Cuyler, 446 U.S. at 350, 100 S.Ct. 1708, such a conflict is "insufficient to impugn a criminal conviction."
The trial judge made the following findings in his order denying Herring's ineffectiveness claim:
Howard Pearl applied to become a special deputy sheriff in Marion County in 1970. He sought to obtain this status in order to have the authority to carry a concealed firearm throughout the State of Florida "for protection of self and family."* The sheriff of Marion County in 1970, Doug Willis, apparently granted Mr. Pearl the status of special deputy sheriff for the purposes of carrying a concealed firearm.... Sheriff Moreland testified that he continued Mr. Pearl's status as a professional courtesy and that this was a common practice at that time to continue the status of prominent members of the community.
Although Mr. Pearl was required to maintain liability insurance by the Marion County Sheriff's Department through the Florida Sheriff's Self-Insurance Fund, he had no criminal law enforcement authority or duties and was considered as an unpaid medium hazard special deputy sheriff....
Despite the fact that Mr. Pearl's identification card issued by the Marion County Sheriff's Department stated that he was "a regularly constituted deputy sheriff," this Court finds that the testimony of Mr. Pearl and Sheriff Moreland, at the evidentiary hearing, clearly shows that Mr. Pearl's status was an honorary appointment. Specifically, Mr. Pearl (1) was never certified as a law enforcement officer; (2) never received any compensation from or executed any employee tax forms from the Marion County Sheriff's Department; (3) received no law enforcement training from the Marion County Sheriff's Department; (4) was never issued a uniform, vehicle or any other equipment from the Marion County Sheriff's Department; (5) never made and [was] never given the authority to make any arrests, stops or any other duties as a deputy sheriff of the Marion County Sheriff's Department; (6) never reported to any roll calls at the Marion County Sheriff's Department; (7) was never on a duty roster for the Marion County Sheriff's Department; (8) was never copied on any internal memoranda from the Marion County Sheriff's Department, other than insurance renewal notices; (9) never was asked to act in any way for the Marion County Sheriff's Department; and (10) never held himself out as a regularly constituted deputy sheriff of the Marion County Sheriff's Department. In fact, Sheriff Moreland testified that Mr. Pearl's status was "honorary" in nature and was solely for the purposes of Mr. Pearl being able to carry a concealed firearm.
In addition, James P. Gibson, the Public Defender for the Seventh Judicial Circuit at present and at the time of Mr. Pearl's representation of the Defendant, testified that he knew of Mr. Pearl's status as a special deputy sheriff and that status was honorary and only for the purpose of carrying *1268 a concealed firearm.... Further, Mr. Gibson testified that Mr. Pearl never failed to act responsibly to his clients due to this status and that he never questioned Mr. Pearl's integrity or ability in representing clients because of this special deputy status.
Accordingly, this Court finds as a matter of fact that Mr. Pearl never was and never has been a law enforcement officer of the Marion County Sheriffs Department. Essentially, Mr. Pearl was granted a concealed firearms permit by the Marion County Sheriffs Department in the same manner that many other individuals received during that time period. Contrary to defense counsels' assertions, this Court determines that Mr. Pearl had no actual or apparent authority to act as "a regularly constituted deputy sheriff" for the Marion County Sheriffs Department because at no time did he indicate to anyone that he possessed anything other than a "gun toter's permit" as a result of his special deputy status.
. . . . .
Defense counsel interpreted Mr. Pearl's alleged ineffective cross-examinations and alleged bolstering of law enforcement officers as the adverse effect of his conflict of interest. However, defense counsel presented no evidence or testimony that demonstrated that Mr. Pearl was actively representing conflicting interests. Therefore, this Court finds that the Defendant and his counsel failed to demonstrate that any actual conflict of interest existed between Mr. Pearl and the Defendant resulting from Mr. Pearl's special deputy status.
* At the time Mr. Pearl sought to carry a concealed firearm there were no provisions for the sanctioning of private individuals to carry concealed weapons throughout the State of Florida.
As noted in the order, the trial judge found that Herring failed to establish the first prong of Cuylerthat Pearl labored under an actual conflict of interest. We agree. The record reveals no evidence suggesting that Herring's interests were impaired or compromised as a result of Pearl's special deputy status.
Herring argues that the trial judge erred as a matter of law in failing to recognize that a significant "adverse effect" is sufficient alone to demonstrate an "actual conflict of interest." For this proposition, Herring cites Freund v. Butterworth, 117 F.3d 1543 (11th Cir.1997), vacated, Freund v. Butterworth, 135 F.3d 1419 (11th Cir.1998). Although the cited Freund decision is a legal nullity, we note that Herring mischaracterizes the holding of the decision and we would not grant him relief even if the decision were law. Freund does state that "inquiries into `actual conflict' and `adverse effect' necessarily interrelate," 117 F.3d at 1571 (emphasis added), but does not state that ineffectiveness can be proven by evidence of adverse effect alone. In fact, in Freund, the Eleventh Circuit identified at least three separate sources of actual conflict. Although a court's inquiry into "actual conflict" and "adverse effect" may overlap, the Cuyler decision is clear on its face that the defendant must satisfy both prongs of the claim to prove ineffective assistance of counsel. Therefore, because Herring failed to demonstrate that an actual conflict of interest existed, we do not reach the issue of whether the conflict adversely affected Pearl's representation. See Porter v. Singletary, 14 F.3d 554, 560-61 (11th Cir.1994)(declining to address question of adverse effect on representation without proof of actual conflict).
We reject Herring's second and third claims because they pertain solely to the issue of "adverse effect" under Cuyler. Accordingly, we affirm the trial judge's denial of Herring's second rule 3.850 motion.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN, WELLS, ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] Of the denial of Herring's first rule 3.850 motion, we wrote, "The trial judge, in an extensive order, fully explained why each of the ineffective-assistance-of-counsel claims did not meet the test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and Knight v. State, 394 So.2d 997 (Fla.1981). We fully agree with the trial judge's findings and commend him for his detailed explanation." Herring, 501 So.2d at 1280.
[2] In a separate case we held that Pearl's special deputy sheriff status was not a per se conflict of interest. Harich v. State, 573 So.2d 303 (Fla. 1990).
[3] The other defendants were Robert Teffeteller, Kenneth Quince, Robert Henderson, Gerald Stano, Joel Wright, Johnny Robinson, Felix Castro, and Richard Randolph.