WARNER, J.
Appellant Howard Keyes challenges the denial of his motion for postconviction relief from his conviction for first degree murder of Mark Weiner, the father of his girlfriend, Melissa Weiner. The trial court held an evidentiary hearing prior to denying all relief. He raises three issues: (1) ineffective assistance of counsel as his public defender counsel was operating under a conflict of interest at trial because several state witnesses were former clients of the public defender’s office; (2) ineffective assistance of counsel for failure to request a voluntary intoxication jury instruction; and (3) ineffective assistance for failure to object to the medical examiner’s testimony that his conclusion regarding the cause of death was based upon unreliable double hearsay. We affirm on all issues.

Factual Background

The evidence implicating Keyes in the death of the victim was strong, and included admissions that Keyes made to Melissa and to inmates while he was incarcerated. The victim had thrown Keyes and Melissa out of his house, where they had been living, because of their drug abuse. The state presented evidence that before the murder Keyes had expressed anger and hatred of the victim and threatened to physically harm him. Prior to the murder Keyes contacted an acquaintance, who owned a body shop in another state, and inquired about disposing of the victim’s vehicle.
During the hours leading up to the murder, Keyes and Melissa had been on a drug binge but had run out of drugs. Melissa explained that they walked for three hours to get to the victim’s home before the murder occurred. Keyes went inside while she stayed outside. When Keyes returned, he told her that he had put the victim in a headlock to prevent him from calling police and that he did not intend to kill the victim.
Various witnesses testified regarding how, after the murder, Keyes and Melissa used the victim’s belongings, including thousands of dollars taken from the victim’s accounts, to purchase crack cocaine. When police apprehended him, Keyes was found in possession of the victim’s birth certificate and credit cards.
Inmates who were in jail with Keyes after his arrest testified that he made incriminating statements. Charles Comer testified that Keyes told him that he had gone to the victim’s home “to get paid” and that the victim was not supposed to be home. Comer testified that Keyes said the victim “started some s — t” and that Keyes said “you don’t f — k with me when I’m high.” Keyes described how he wrestled with the victim and demonstrated to Comer the hold that Keyes used on the victim. Another jail inmate, who bonded with Keyes regarding the military, testified that Keyes told him “being that we are both in the military we know how to choke out people.”
The medical examiner could not initially determine a cause of death in this case, but after receiving information from police regarding witness statements, the medical examiner changed the cause of death to compression of the neck. The expert discussed studies regarding neck holds (“sleeper holds”) used by police and the military to subdue individuals by cutting the flow of blood to the brain. The exam *283 iner discussed a study showing that a disproportionate number of middle-aged men accidentally died when a sleeper hold was applied.
The public defender was appointed to represent Keyes. The office had formerly represented several of the state witnesses, who were jail inmates or involved in the buying and selling of drugs. Up until less than two weeks before Keyes’ trial began, the office represented Comer, who ultimately received a favorable plea deal from the state in numerous pending cases in exchange for his testimony at trial.
Keyes’ appointed counsel, however, had never met nor represented any of the state witnesses personally. The office withdrew from representing all state witnesses prior to trial and obtained waivers of confidentiality from the former clients. While counsel told Keyes of the office’s prior or simultaneous representation of the witnesses, counsel never asked nor discussed with Keyes whether Keyes was concerned about the potential conflict of interest. Counsel did not obtain a written waiver of any conflict and did not bring the conflict to the trial court’s attention. See generally R. Regulating Fla. Bar 4-1.7 (Conflict of Interest; Current Clients); R. Regulating Fla. Bar. 4-1.9 (Conflict of Interest; Former Clients).

Analysis

To establish a claim of ineffective assistance of counsel based on a conflict of interest, Keyes must show that counsel labored under an actual conflict of interest that adversely affected his lawyer’s performance. In Hunter v. State, 817 So.2d 786, 791-92 (Fla.2002), our supreme court explained:
[I]n order to establish an ineffectiveness claim premised on an alleged conflict of interest the defendant must “establish that an actual conflict of interest adversely affected his lawyer’s performance.” Cuyler [v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) ]; see also Quince v. State, 732 So.2d 1059, 1065 (Fla.1999). A lawyer suffers from an actual conflict of interest when he or she “actively represents] conflicting interests.” Cuyler, 446 U.S. at 350[, 100 S.Ct. 1708]. To demonstrate an actual conflict, the defendant must identify specific evidence in the record that suggests that his or her interests were compromised. See Herring v. State, 730 So.2d 1264, 1267 (Fla.1998). A possible, speculative or merely hypothetical conflict is “insufficient to impugn a criminal conviction.” Cuyler, 446 U.S. at 350, 100 S.Ct. 1708, 64 L.Ed.2d 333. “[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.” Id. If a defendant successfully demonstrates the existence of an actual conflict, the defendant must also show that this conflict had an adverse effect upon his lawyer’s representation. See Strickland, 466 U.S. at 692, 104 S.Ct. 2052, 80 L.Ed.2d 674; Cuyler, 446 U.S. at 350, 100 S.Ct. 1708, 64 L.Ed.2d 333.
The question of whether a defendant’s counsel labored under an actual conflict of interest that adversely affected counsel’s performance is a mixed question of law and fact. See Cuyler, 446 U.S. at 342, 100 S.Ct. 1708, 64 L.Ed.2d 333; Quince, 732 So.2d at 1064. Once a defendant satisfies both prongs of the Cuyler test, prejudice is presumed and the defendant is entitled to relief. See Strickland, 466 U.S. at 692, 104 S.Ct. 2052, 80 L.Ed.2d 674; Cuyler, 446 U.S. at 349-50, 100 S.Ct. 1708, 64 L.Ed.2d 333.
The existence of actual conflict, and whether the conflict adversely affected the *284 lawyer’s performance, is a mixed question. This court defers to the postconviction court’s factual findings but reviews the legal conclusions de novo. State v. Larzelere, 979 So.2d 195, 208 (Fla.2008).
An imputed conflict with a public defender’s office may be enough to constitute an “actual conflict” where trial counsel is aware that the office represents, or has represented, state witnesses. See Bouie v. State, 559 So.2d 1113, 1115 (Fla.1990); R. Regulating Fla. Bar 4-1.10 (Imputation of Conflicts of Interest; General Rule). Cf. Mungin v. State, 932 So.2d 986, 1001-02 (Fla.2006) (holding that actual conflict was not established where trial counsel was not aware that his office was representing the state witness during trial); Hunter, 817 So.2d at 792 (holding that actual conflict was not established where counsel was not aware that state witness had previously been represented by the public defender’s office). Keyes failed to establish, however, that trial counsel’s conflict of interest amounted to an actual conflict that adversely affected counsel’s performance.
To establish the claim, Keyes was required to identify “specific evidence in the record that suggests that his or her interests were compromised.” Hunter, 817 So.2d at 792. The postconviction court made a detailed evaluation of Keyes’ claims as to the various witnesses represented by the public defender’s office. It concluded that although a serious breach of ethical standards occurred when counsel failed to obtain a waiver of conflict from Keyes, this deficiency did not prejudice the outcome of the trial or the performance of counsel. Counsel vigorously cross-examined the state witnesses, including Comer, and Keyes was not able to show how the testimony would have been different absent the ethical lapse. On appeal, Keyes likewise has not pointed to anything other than speculation as to how counsel’s representation was compromised. There is nothing in the record to show that his “interests were impaired or compromised for the benefit of the lawyer or another party.” Herring, 730 So.2d at 1267. “Without this factual showing of inconsistent interests, the conflict is merely possible or speculative and, under Cuyler, 446 U.S. at 350, 100 S.Ct. 1708, such a conflict is ‘insufficient to impugn a criminal conviction.’ ” Id. We find no error in the trial court’s conclusions.
As to the defense of involuntary intoxication, which had not yet been abolished as a defense at the time of commission of this crime, the trial court found that counsel’s strategic grounds for not requesting an instruction were reasonable. Moreover, the court found that the voluntary intoxication defense would not have been available, because the evidence showed that Keyes was not intoxicated at the time of the offense. Thus, Keyes not only did not establish deficient performance, he failed to show that it was “reasonably likely” that a voluntary intoxication defense would have succeeded at trial. Harrington v. Richter, — U.S. —, —, 131 S.Ct. 770, 791-92, 178 L.Ed.2d 624 (2011) (holding that prejudice under Strickland does not arise when a reasonable probability exists that the jury may have found reasonable doubt as to guilt, but rather when “[t]he likelihood of a different result [is] substantial, not just conceivable”). We find no error in the trial court’s findings and conclusions of law.
Finally, Keyes claims that counsel was deficient in failing to object to the medical examiner’s testimony regarding the cause of death. Instead, counsel cross-examined the doctor and obtained an admission that the opinion regarding cause of death was based solely on what others had said and not based on physical evidence. *285 Counsel then used this to argue that the death was an accident.
Keyes argues that the decision was not reasonable because accident is not a defense to first degree felony murder. The jury, however, convicted Keyes of first degree premeditated murder as charged in the indictment. Keyes fails to show a substantial likelihood that challenging the precise manner of death would have altered the verdict. Keyes argues that, if counsel had objected, the cause of death would have remained a “mystery.” Almost certainly, however, in light of the other evidence, the jury would not have believed that the victim died of natural causes or that someone else had committed the murder if the cause of death had been listed as unknown. Moreover, the jury was aware that the expert found no physical evidence to substantiate his opinion.
For the foregoing reasons we affirm the denial of appellant’s motion for postconviction relief.
POLEN and TAYLOR, JJ., concur.