DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MICHAEL SMITH,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D13-512

[September 24, 2015]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Barbara McCarthy, Judge; L.T. Case No. 12-008150 CF10A.

Carey Haughwout, Public Defender, and Emily Ross-Booker, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Melynda L. Melear, Assistant Attorney General, West Palm Beach, for appellee.

CIKLIN, C.J.

Michael Smith appeals his conviction and sentence for attempted aggravated battery. Although the trial court reduced Smith's charge from aggravated battery to attempted aggravated battery, Smith argues that, at most, the state was only able to prove the elements of a simple misdemeanor battery. Second, Smith contends the trial court erred in imposing a public defender fee without mentioning the imposition at the sentencing hearing or advising Smith that he could contest the amount. We agree on both points and reverse.

Smith choked the victim and robbed him of his wallet. According to the testimony at trial, Smith approached the victim on the street, put one arm around the victim's neck, one arm behind his head, and kicked his legs out from under him. The victim then lost consciousness and awoke a couple of minutes later on the sidewalk with a scratch on his elbow and without his wallet.

Smith was later apprehended and charged with strong arm robbery

and aggravated battery. After the state presented its case in chief, Smith moved for judgment of acquittal on the charge of aggravated battery, seeking to have his charge reduced to simple battery. Upon the state's urging, the trial court instead reduced the charge to attempted aggravated battery.

The jury found Smith guilty of attempted aggravated battery, but acquitted him of robbery. The trial court sentenced Smith to a term of imprisonment and imposed a $350 public defender fee.[1]

On appeal, Smith asserts that the state failed to present evidence of intent to inflict great bodily harm and thus did not meet its burden of proving the elements of attempted aggravated battery. Smith urges that the trial court erred by denying his motion for judgment of acquittal on the charge of aggravated battery and further erred by then reducing it to an attempt. Smith argues that only the charge of simple battery should have been submitted to the jury.

To prove aggravated battery, the state must present evidence that, while committing the battery, the defendant "[i]ntentionally or knowingly cause[d] great bodily harm, permanent disability, or permanent disfigurement," or used a deadly weapon, or that the victim of the battery was pregnant and the offender knew or should have known she was pregnant. *See* § 784.045(1), Fla. Stat. (2012). "Simple battery occurs when a person actually and intentionally touches or strikes another person against the will of the other or intentionally causes bodily harm to another person." *C.A.C. v. State*, 771 So. 2d 1261, 1262 n.1 (Fla. 2d DCA 2000) (citing § 784.03(1)(a), Fla. Stat. (1999)) (reversing aggravated battery conviction for entry of simple battery conviction where defendant stabbed victim with a fork, resulting in scratches, swelling, and puncture marks for which victim did not receive medical treatment).

"Florida courts have generally defined 'great bodily harm' as 'great as distinguished from slight, trivial, minor or moderate harm, and as such does not include mere bruises as are likely to be inflicted in a simple assault and battery.'" *T.W. v. State*, 98 So. 3d 238, 243 (Fla. 4th DCA 2012) (citing *Gordon v. State,* 126 So. 3d 292, 295 (Fla. 3d DCA 2011); *Nguyen v. State*, 858 So. 2d 1259, 1260 (Fla. 1st DCA 2003); *Heck v. State*, 774 So. 2d 844, 845 (Fla. 4th DCA 2000); *C.A.C.*, 771 So. 2d at 1262; *Guthrie v. State*, 407 So. 2d 357, 358 (Fla. 5th DCA 1981)). "[T]he

---

[1] Smith moved to correct the sentence, arguing that the fee was illegal because the trial court neither stated it was imposing the fee nor offered Smith an opportunity to contest the amount. The trial court denied the motion.

2

state 'must prove more than that the victim suffered some harm.'" *Id.* (quoting *C.A.C.*, 771 So. 2d at 1262).

In the proceedings below, the trial court accepted the state's argument that *Zellars v. State*, 707 So. 2d 345, 346 (Fla. 5th DCA 1998), supported the charge of attempted aggravated battery, as it held that such a charge properly went to the jury where a defendant choked a victim.

In *Zellars*, a fifteen-year-old victim threw a soda on the twenty-three-year-old defendant after he grabbed her. She jumped into a nearby car and Zellars followed her. He put his hands around her neck for two to three minutes, during which time she was unable to breathe, yell out, or push him off. When two people nearby noticed what was transpiring, one of them ran over to another male and urged him to intervene. He did so, and pushed Zellars away from the victim. The victim then sought medical treatment at the emergency room. The emergency room doctor testified at trial that the victim's neck had not been broken, only bruised, but that it is possible for a strong person to break someone's neck or crush someone's trachea or larynx by choking them, which injuries could be serious and life-threatening. Zellars was convicted of attempted aggravated battery.

On appeal, Zellars argued the trial judge erred by not granting his motion for judgment of acquittal because there was insufficient or no evidence that he intended to cause the victim great bodily harm. The appellate court held that the question of intent was properly resolvable by the jury. *Id.* at 346. In so holding, the court noted that proof of Zellars' intent was circumstantial, stemmed from witness testimony about his actions, and that "[h]e was much larger and older than the victim; the victim was strangled for three minutes and could not cry out or breathe; and he was only stopped from continuing to strangle her by the intervention of another man." *Id.*

Here, there was no evidence to support Smith's intent to cause great bodily harm and no evidence as to the duration of a choke; only that any type of "choking" subsided when the victim lost consciousness. There were no eyewitnesses, and the record does not indicate that there was a significant size disparity between Smith and the victim. Unlike the victim in *Zellars*, the victim here did not seek medical treatment and there was no testimony from a medical expert that Smith's actions could have resulted in serious and life-threatening injuries to the victim. Here, the victim had a single scratch on his arm.

3

Because the state failed to present evidence that Smith intended to cause the victim great bodily harm, the trial court should have reduced the charge to simple battery instead of attempted aggravated battery. Accordingly, we reverse Smith's conviction and remand for the trial court to find Smith guilty of simple battery and resentence him accordingly.

Although the issue concerning a public defender fee is rendered moot due to our instruction to resentence Smith, we discuss it to ensure the error is not repeated. As contended by Smith, the trial court erred in imposing a public defender fee without notice.

Florida Rule of Criminal Procedure 3.720(d)(1) provides:

> If the accused was represented by a public defender or other court appointed counsel, the court shall notify the accused of the imposition of a lien pursuant to section 938.29, Florida Statutes. The amount of the lien shall be given and a judgment entered in that amount against the accused. Notice of the accused's right to a hearing to contest the amount of the lien shall be given at the time of sentence.

Here, the trial court did not notify Smith that it was imposing the public defender fee, nor of his right to a hearing to contest the amount of the fee. Should the court impose the fee when resentencing Smith, the court is obligated to provide Smith with notice of the fee and of his right to a hearing to contest the amount at the time of resentencing.[2] *See id.*

The remaining issues raised by Smith either lack merit or are moot in light of our reversal.

*Reversed and remanded with directions.*

KLINGENSMITH, J., concurs.
FORST, J., dissents with opinion.

FORST, J., dissenting.

I respectfully disagree with the majority opinion that the trial judge erred in reducing the charge of aggravated battery to attempted

---

[2] Although not specifically raised by Smith on appeal, we take note of Florida Rule of Criminal Procedure 3.111(b)(5)(A), which requires a trial court to notify a criminal defendant of the possibility of a public defender lien *before the initial appointment* of the public defender.

aggravated battery rather than simple battery.[3]  Florida Rule of Criminal Procedure 3.510(b) states in pertinent part that "[t]he judge shall not instruct on any lesser included offense as to which there is *no* evidence" (emphasis added).  In the instant case, I cannot conclude that there was "no evidence" on which a jury could find the defendant guilty of attempted aggravated battery.

The victim testified that he had left the bus terminal and had begun walking to work when a man he later identified as Appellant Michael Smith approached him on the sidewalk and asked for a cigarette.  The victim pulled out a cigarette and gave it to him.  Smith asked the victim "do you believe in God," and the victim responded "sometimes."  After taking a step and a half away from Smith, the victim felt an arm around his neck, another arm behind his head, and his legs "being kicked out from under" him.  Several minutes later, the victim awoke on the sidewalk.  He noticed that his wallet and cigarettes were gone and that there was blood coming from a cut on his arm.

As noted in the majority opinion, in response to Smith's motion for judgment of acquittal on the charge of aggravated battery, the trial court reduced the charge to attempted aggravated battery and the jury entered a verdict of guilty.  On appeal, Smith raises the following question:  does the record support the trial court's decision to submit the charge of attempted aggravated battery to the jury; i.e., was there *any* (the opposite of *no*) evidence presented during the state's case, viewed in a manner to affirm the trial court's decision, that Smith intended to cause the victim great bodily harm, permanent disability, or permanent disfigurement as required by section 784.045(1)(a)1, Florida Statutes (2012), when he applied this chokehold[4] to the victim?

Professional wrestler Adrian Adonis was known for his sleeper hold, which he called "goodnight Irene."[5]  A professional wrestling sleeper hold is not intended to cause the victim great bodily harm, as professional wrestling is choreographed entertainment (i.e., it's fake).  A chokehold

---

[3] I concur with respect to the holding that the trial court erred in imposing a public defender fee without notice.

[4] "[A] method of holding someone by putting your arm around the person's neck with enough pressure to make breathing difficult or impossible.  *Chokehold*, MERRIAM-WEBSTER,     http://www.merriam-webster.com/dictionary/chokehold (last visited Sept. 2, 2015).

[5]     *See     Adrian     Adonis*,     ONLINE     WORLD     WRESTLING, http://www.onlineworldofwrestling.com/bios/a/adrian-adonis     (last     visited Sept. 2, 2015).

applied by a mugger on a sidewalk, however, is very real. As U.S. Supreme Court Justice Thurgood Marshall described:

> It is undisputed that chokeholds pose a high and unpredictable risk of serious injury or death. Chokeholds are intended to bring a subject under control by causing pain and rendering him unconscious. Depending on the position of the officer's arm and the force applied, the victim's voluntary or involuntary reaction, and his state of health, an officer may inadvertently crush the victim's larynx, trachea, or thyroid. The result may be death caused by either cardiac arrest or asphyxiation. An LAPD officer described the reaction of a person to being choked as "do[ing] the chicken," in reference apparently to the reactions of a chicken when its neck is wrung. The victim experiences extreme pain. His face turns blue as he is deprived of oxygen, he goes into spasmodic convulsions, his eyes roll back, his body wriggles, his feet kick up and down, and his arms move about wildly.

*City of Los Angeles v. Lyons*, 461 U.S. 95, 116-18 (1983) (Marshall, J., dissenting) (footnote and citations omitted);[6] *see also Keyes v. State*, 95 So. 3d 280, 282-83 (Fla. 4th DCA 2012) (noting that the medical examiner who testified "discussed a study showing that a disproportionate number of middle-aged men died when a sleeper hold was applied"); *Zellars v. State*, 707 So. 2d 345, 347-48 (Fla. 5th DCA 1998) (Cobb, J., concurring) ("It is an obvious fact that death *can* result from choking; that could be judicially noted without any medical testimony at all.").

In *Zellars*, the concurring judge's decision to join in affirming the attempted aggravated battery conviction was premised on "one factor, and that [was] the state's evidence that Zellars did not voluntarily release the victim but retained his grip for some two to three minutes until

---

[6] *Lyons* involved a claim for injunctive relief filed by an individual who was injured as the result of a chokehold administered by a Los Angeles police officer. Although Justice Marshall wrote for a four-Justice minority with respect to the injunction issue, there is nothing in the majority's opinion that conflicts with Justice Marshall's narrative on the risks associated with use of a chokehold. In fact, the Court's majority opinion noted that, in the five years following the filing of Lyons's complaint, there had been fifteen deaths associated with the administration of chokeholds by the Los Angeles police. *Lyons*, 461 U.S. at 100.

physically forced away by an intervening third party, with whom he then engaged in a fight." *Id.* at 348. In the instant case, Smith apparently released his grip only after the victim lost consciousness, at which time he dropped the victim to the ground with such force as to draw blood from his arm. Instead of an intervening third party causing the release of the assailant's grip, the intervening event in this case was the victim's loss of consciousness.

Sometimes, as may be the case here, the loss of consciousness is for a small amount of time and no "great bodily harm" results. At other times, as set forth by Justice Marshall's *Lyons* opinion, the loss of consciousness is permanent. Retaining a chokehold/sleeper hold on an individual *until the victim loses consciousness* is inherently dangerous and clearly demonstrates such a reckless disregard for the victim's well-being that a jury could use it as circumstantial evidence of intent on the part of an individual who did not know the victim and was, in fact, about to rob him (thus, there was no possibility that Smith and the victim were merely "roughhousing"). "[I]ntent is a jury question, not properly decided on a motion to dismiss . . . that cannot be ascertained from direct evidence but only inferred from the acts of parties and surrounding circumstances." *State v. Franchi*, 746 So. 2d 1126, 1128 (Fla. 4th DCA 1999). As such, there was no error in the trial court sending the charge of attempted aggravated battery to the jury. Accordingly, I dissent.

*     *     *

**Not final until disposition of timely filed motion for rehearing.**