932 So.2d 986 (2006)
Anthony MUNGIN, Appellant,
v.
STATE of Florida, Appellee.
Anthony Mungin, Petitioner,
v.
James R. McDonough, etc., Respondent.
Nos. SC03-780, SC03-1774.
Supreme Court of Florida.
April 6, 2006.
Rehearing Denied June 13, 2006.
*990 Todd G. Scher, Miami Beach, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, and Curtis M. French, Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Anthony Mungin appeals an order of the circuit court denying a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained in this opinion, we affirm the trial court's order and deny the petition for a writ of habeas corpus.

FACTS AND PROCEDURAL HISTORY
Anthony Mungin was convicted of the 1990 murder of convenience store clerk Betty Jean Woods. The pertinent facts of this case are set forth in this Court's opinion on direct appeal as follows:
Betty Jean Woods, a convenience store clerk in Jacksonville, was shot once in the head on September 16, 1990, and died four days later. There were no eyewitnesses to the shooting, but shortly after Woods was shot a customer [Ronald Kirkland] entering the store passed a man leaving the store hurriedly with a paper bag. The customer, who found the injured clerk, later identified the man as Mungin. After the shooting, a store supervisor found a $59.05 discrepancy in cash at the store.
Mungin was arrested on September 18, 1990, in Kingsland, Georgia. Police found a .25-caliber semiautomatic pistol, bullets, and Mungin's Georgia identification when they searched his house. An *991 analysis showed that the bullet recovered from Woods had been fired from the pistol found at Mungin's house.
Jurors also heard Williams[1] rule evidence of two other crimes. They were instructed to consider this evidence only for the limited purpose of proving Mungin's identity.
First, William Rudd testified that Mungin came to the convenience store where he worked [in Monticello] on the morning of September 14, 1990, and asked for cigarettes. When Rudd turned to get the cigarettes, Mungin shot him in the back. He also took money from a cash box and a cash register. Authorities determined that an expended shell recovered from the store came from the gun seized in Kingsland.
Second, Thomas Barlow testified that he saw Meihua Wang Tsai screaming in a Tallahassee shopping center on the afternoon of September 14, 1990. Tsai had been shot while working at a store in the shopping center. A bullet that went through Tsai's hand and hit her in the head had been fired from the gun recovered in Kingsland.
Mungin v. State, 689 So.2d 1026, 1028 (Fla.1995) (footnote omitted). The jury, which was instructed on both premeditated murder and felony murder with robbery or attempted robbery as the underlying felony, returned a general verdict of first-degree murder. See id.
During the penalty phase, the State presented the testimony of Detective Cecil Towle, who was the lead investigator in the Tallahassee case. Detective Towle testified regarding his interview with the victim, Ms. Tsai, who had returned to China.
In mitigation, Mungin presented the testimony of friends and family who had close contact with Mungin as a child and teenager. They collectively testified that he was very respectful of his grandparents, with whom he lived, that he attended church, and that he was not a violent or aggressive person. However, most of these witnesses also testified that they had not had any contact with Mungin in at least several years.
Mungin also presented the testimony of Glenn Young, a corrections and probation officer who supervised Mungin for about six months when Mungin resided at the Cross City Correctional Institution beginning in January 1992. Young testified that Mungin had no disciplinary violations during that time. During questioning by defense counsel, Young also indicated that although Mungin was currently serving a life sentence for the other shootings, it did not necessarily mean that he would be incarcerated for life.
Last, Mungin presented the testimony of Dr. Harry Krop, a clinical psychologist and expert in forensic psychology. Dr. Krop testified that he did not find any evidence that Mungin suffered from any major mental illness or personality disorder. Dr. Krop indicated that Mungin functioned in the average range of intellectual ability and that there was no evidence of any type of neurological impairment. Dr. Krop did state that Mungin suffers from a history of drug and alcohol abuse and that Mungin did fairly well in school until drugs changed his lifestyle. Dr. Krop also made it clear that although shooting someone is an antisocial act, in his opinion, Mungin does not suffer from a personality disorder, shows a number of positive strengths, and would be able to function in open prison society.
At the conclusion of the penalty phase, the jury recommended the death penalty by a vote of seven to five. See id. at 1028. *992 After weighing the aggravating and mitigating circumstances, the trial court followed the jury's recommendation and sentenced Mungin to death.[2]
Mungin raised nine issues on direct appeal.[3] This Court concluded that the trial court erred in denying Mungin's motion for judgment of acquittal on the theory of premeditated murder. See id. at 1029. However, the Court did not reverse Mungin's first-degree murder conviction because the Court concluded that the trial court correctly denied Mungin's motion for judgment of acquittal on the alternative theory of felony murder. See id. The Court also ruled that although the trial court erred in instructing the jury on premeditated murder, this error was harmless. See id. The Court rejected all of Mungin's other arguments as either unpreserved or meritless, and affirmed the first-degree murder conviction and sentence of death. See id. at 1030-32.
After several changes of counsel, Mungin filed a consolidated amended motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, in which he raised multiple claims. Following a Huff[4] hearing, the circuit court ordered an evidentiary hearing on three of Mungin's claims: (1) that trial counsel rendered ineffective assistance during the guilt phase; (2) that there is newly discovered evidence; and (3) that trial counsel rendered ineffective assistance during the penalty phase by failing to present evidence of Mungin's troubled childhood. Prior to the evidentiary hearing, Mungin filed two supplemental claims. The first claim alleged that if the State knew of eyewitness Kirkland's criminal history and did not disclose it to defense counsel, the State violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In his second supplemental claim, Mungin argued that his death sentence should be reversed under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). The circuit court declined to consider Mungin's supplemental Brady claim based on its previous ruling that it would not allow any more filings. The trial court also decided not to address the Ring claim until there was further development on the issue from either *993 this Court or the United States Supreme Court.
At the evidentiary hearing, Mungin presented the testimony of several witnesses to support his claims of ineffective assistance of trial counsel. Charles G. Cofer, Mungin's lead trial counsel, testified regarding his recollection of his actions during trial preparation and trial.[5] Edward Kimbrough, Jesse Sanders, Brian Washington, Victoria Jacobs, Philip Levy, and Vernon Longworth testified regarding Mungin's whereabouts on the day of the murder and to other facts supporting Mungin's claim that trial counsel was ineffective for failing to fully investigate Mungin's alibi defense. Eyewitness Ronald Kirkland testified regarding his statement to police in 1990, his identification of Mungin, and his prior criminal history. In rebuttal, the State presented the testimony of Cofer and Detective Dale Gilbreath, the lead detective in the case.
The trial court issued an order denying relief and Mungin appeals, raising seven issues, which include numerous subissues, for this Court's review.[6] Mungin also petitions for a writ of habeas corpus, raising three claims for relief.[7]

ANALYSIS

A. MOTION FOR POSTCONVICTION RELIEF

1. Recusal of Judge Southwood
In his first issue on appeal, Mungin argues that Senior Judge John D. Southwood, as well as all of the judges on the Fourth Judicial Circuit, should have been recused from presiding over Mungin's postconviction proceedings because at the time of these proceedings Mungin's trial counsel, Charles G. Cofer, was a sitting county judge in Duval County. Mungin admits that he did not timely file a motion to disqualify in the trial court but argues that Judge Southwood should have sua sponte recused himself and that his failure to do so was fundamental error. Mungin asks this Court to reverse the denial of his postconviction motion and grant him a new evidentiary hearing in another judicial circuit. Essentially, he urges a per se rule that any time a judge in a circuit represented the defendant in a criminal trial and testifies as a witness in a postconviction proceeding, all the judges of that circuit must sua sponte recuse themselves. We disagree that any rule, statute or court precedent dictates such a result and consider *994 a rule of circuitwide disqualification unnecessary to preserve judicial impartiality.
In addition, Mungin's argument is procedurally barred because it was raised for the first time on appeal in disregard of the time parameters in which motions to disqualify should be filed. As we stated in a recent case, a claim of judicial bias is procedurally barred on direct appeal if the defendant fails to seek disqualification of the judge after having specific knowledge of the grounds for disqualification. See Schwab v. State, 814 So.2d 402, 407 (Fla. 2002).
In Schwab, the Court rejected the defendant's argument that the judge should have recused himself under Canon 3 E of the Code of Judicial Conduct. We distinguished Maharaj v. State, 684 So.2d 726 (Fla.1996), in which the defendant discovered after he commenced his appeal of the denial of his 3.850 motion that the trial judge had previously supervised the attorneys who prosecuted the defendant. See Schwab, 814 So.2d at 408. Canon 3 E(1)(b) expressly requires that a judge be disqualified if "the judge served as a lawyer or was the lower court judge in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning it." (Emphasis supplied.) Accordingly, under Canon 3 E, the trial judge in Maharaj should have recused himself regardless of whether a motion to disqualify was filed.
In contrast to Maharaj and as in Schwab, Mungin had specific knowledge of the alleged grounds for disqualification but failed to file a motion to disqualify. Further, unlike Maharaj, there is no specific requirement that a trial judge recuse himself or herself simply because a fellow judge in the circuit is to serve as a witness. Mungin has made no claim of actual, rather than merely presumptive, bias. Thus, his claim is both procedurally barred and without merit.

2. Public Records Request
In his second issue on appeal, Mungin argues that the trial court's failure to conduct an in-camera inspection of documents from the Duval County State Attorney's Office and Duval County Sheriff's Office, claimed to be exempt from his public records request, was error that warrants reversal of the denial of his motion for postconviction relief. In Vining v. State, 827 So.2d 201, 218 (Fla.2002), this Court addressed the defendant's claim that he was denied access to public records. In granting the defendant's request for additional public records, the trial court ordered the defendant to submit a demand to each agency with a list of the specific documents requested and ordered the agencies to comply within fifteen days. See id. at 219. The defendant took no further action between the date of the order and the evidentiary hearing on his postconviction claims. See id. This Court rejected the defendant's public records claim, stating:
Although Vining now contends that there are many public records outstanding, he made no further complaint on the public records issue during the five-month span between the postconviction court's public records order and the evidentiary hearing. Based on this record, we conclude that the court afforded Vining ample time and opportunity to pursue any public records claim. Through his own actions, Vining either waived or abandoned any claim that he was denied public records.
Id.
This Court rejected a similar claim in Pace v. State, 854 So.2d 167, 180 (Fla. *995 2003). In that case, the trial court denied an evidentiary hearing on the defendant's claim that certain state agencies failed to provide public records. The defendant then filed a similar public records request but "made no complaint and filed no motion to compel with the postconviction court regarding these requests." Id. The Court cited to Vining and concluded that "[d]ue to Pace's inaction during the year and a half between his public records request and the evidentiary hearing, . . . Pace has waived or abandoned any claim that he was denied public records." Id.
As in Vining and Pace, Mungin made a request for public records but subsequently failed to follow up on the request by informing the trial court that the issue had not been resolved. Postconviction counsel, Dale Westling, was well aware of the sealed boxes at the records repository, filing a second request to have those records sent to the court. The trial court subsequently entered an order directing that those records be delivered. Kenneth Malnik, Mungin's privately retained counsel who first appeared in the case on March 1, 2001, was aware that there were records that had not been provided by Westling to Malnik. In fact, due to this discovery, Malnik sought and was granted an extension of time in which to file the consolidated amended motion for postconviction relief. However, Malnik did not pursue an in-camera inspection of any documents that were claimed to be exempt from disclosure. Thus, Mungin had ample opportunity to pursue this issue from the date of the trial court's order to the time of the evidentiary hearing in June 2002. Accordingly, Mungin has waived or abandoned his claim that the trial court failed to conduct an in-camera review of these records and we deny this claim for relief.

3. Detective Gilbreath's Notes
Mungin next asserts that he was denied a full and fair postconviction evidentiary hearing because the trial court refused to review Detective Gilbreath's rough notes of the interview Detective Gilbreath conducted with Mungin during the investigation. The trial court declined to review the notes, finding that they were not relevant to Mungin's ineffective assistance of counsel claim and that the issue was beyond the scope of direct examination. Mungin does not contend that these notes might contain Brady material, nor does it appear that these notes were part of the Duval County Sheriff's Office records that were the subject of Mungin's public records request. Under the circumstances of this case, there was no error in the trial court's ruling on this evidentiary matter.

4. Summary Denial of Ineffective Assistance of Counsel Claims
In his next issue on appeal, Mungin argues that the trial court erred in summarily denying several of his claims of ineffective assistance of trial counsel. Florida Rule of Criminal Procedure 3.850(d) provides that a claim may be denied without a hearing where "the motion, files, and records in the case conclusively show that the movant is entitled to no relief."[8] Thus, to support summary denial *996 without a hearing, a trial court must either state its rationale or attach to its order those specific parts of the record that refute each claim presented in the motion. See Anderson v. State, 627 So.2d 1170, 1171 (Fla.1993). Further, when the trial court denies postconviction relief without conducting an evidentiary hearing, "this Court must accept [the defendant's] factual allegations as true to the extent they are not refuted by the record." Rose v. State, 774 So.2d 629, 632 (Fla.2000), receded from on other grounds by Guzman v. State, 868 So.2d 498 (Fla.2003). However, the defendant has the burden of establishing a legally sufficient claim. See Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000). If the claim is legally sufficient, this Court must then determine whether the claim is refuted by the record. See id.
To obtain relief on a claim of ineffective assistance of counsel Mungin must establish
deficient performance and prejudice, as set forth in Strickland v. Washington, 466 U.S. 668 (1984). See Rutherford v. State, 727 So.2d 216, 218 (Fla.1998). As to the first prong, deficient performance, a defendant must establish conduct on the part of counsel that is outside the broad range of competent performance under prevailing professional standards. See Strickland, 466 U.S. at 688. Second, as to the prejudice prong, the deficient performance must be shown to have so affected the fairness and reliability of the proceedings that confidence in the outcome is undermined. See id. at 694; Rutherford, 727 So.2d at 220.
Gore v. State, 846 So.2d 461, 467 (Fla.2003) (parallel citations omitted).
"[W]hen a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other prong." Waterhouse v. State, 792 So.2d 1176, 1182 (Fla.2001). Further, as the United States Supreme Court explained in Strickland,
[j]udicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . .
466 U.S. at 689, 104 S.Ct. 2052. We address each of Mungin's claims separately below.

(a) Voir Dire
Mungin first contends that the trial court erred in denying without an evidentiary hearing his claim that trial counsel was ineffective for accepting the jury without objection, which thereby failed to preserve for appeal the issue of whether the trial court erred in overruling a defense objection to the State's use of a peremptory challenge to strike juror Galloway, an African-American female. At the Huff hearing, the State argued that Mungin was not prejudiced by trial counsel's failure to object because the underlying claim was meritless. After reviewing the record of the voir dire, we conclude that the trial court did not abuse its discretion in granting the State's peremptory challenge *997 of juror Galloway. Therefore, the prejudice prong of Strickland is conclusively refuted. See Valle v. State, 705 So.2d 1331, 1335 (Fla.1997).

(b) Failure to Object During State's Closing Argument
Mungin next asserts that the trial court erred in summarily denying his claim that defense counsel was ineffective for failing to object to three comments made by the prosecutor during guilt and penalty phase closing arguments. After reviewing the comments, we conclude that the record conclusively establishes that none of these isolated arguments was objectionable, and accordingly no ineffective assistance of counsel in failing to object can be demonstrated. Thus, summary denial was appropriate because this claim is without merit.

(c) Failure to Properly Prepare Witness
Mungin next asserts that the trial court erred in summarily denying his claim that trial counsel was ineffective during the penalty phase for failing to properly prepare witness Glenn Young. During direct examination, trial counsel asked Young about the amount of time Mungin was already required to serve in prison because of his prior convictions. Young responded that Mungin was serving a life sentence, but that life does not always mean life. Mungin asserts that as a result of trial counsel's failure to prepare Young, Young was permitted to give highly damaging testimony about the possibility of early release if Mungin was sentenced to life in this case. The trial court denied this claim as procedurally barred.
In his motion for postconviction relief, Mungin appears to argue both the merits of the underlying claimthat Young's testimony was fundamental errorand that trial counsel was ineffective for allowing this testimony. As to the merits of the underlying claim, the trial court correctly found this issue to be procedurally barred because Mungin raised this issue on direct appeal and it was rejected by the Court. See Mungin, 689 So.2d at 1030. However, Mungin's claim that counsel was ineffective for opening the door to this testimony is cognizable in a motion for postconviction relief. See Brown v. State, 846 So.2d 1114, 1123-24 (Fla.2003) (addressing the defendant's claim that counsel was ineffective for opening the door to damaging testimony); Johnson v. State, 769 So.2d 990, 1000-01 (Fla.2000) (same). Accordingly, the trial court erred in failing to address the merits of this claim.
The trial court was required to hold an evidentiary hearing unless Mungin's allegations failed to state a legally sufficient claim or the claim was refuted by the record. See Freeman, 761 So.2d at 1061. To establish prejudice, Mungin's allegations must show that Young's testimony that life does not always mean life "so affected the fairness and reliability of the proceedings that confidence in the outcome is undermined." Gore, 846 So.2d at 467. Specifically, as it pertains to the penalty phase, we must determine whether allowing Young's testimony undermines our confidence in the imposition of the death sentence. We conclude that Mungin has failed to meet this burden.
First, Young's testimony on this subject, although not all favorable to Mungin, allowed defense counsel to argue to the jury that Mungin had already been sentenced to prison for the rest of his natural life. Second, as noted by the Court on direct appeal, the trial court properly instructed the jury that the law at the time for capital sentences was death or life with a minimum mandatory term of twenty-five years. See Mungin, 689 So.2d at 1031. Thus, *998 regardless of the specter of early release on Mungin's prior convictions, the jury knew that a life sentence in this case meant Mungin would serve at least twenty-five years in prison. Accordingly, we conclude that Mungin cannot demonstrate prejudice under the Strickland standard as to this aspect of trial counsel's performance alone or in combination with other alleged deficiencies.[9]

5. Ineffective Assistance of Counsel during the Guilt Phase
In Mungin's fifth issue on appeal, he asserts that the trial court erred in denying three claims of ineffective assistance of counsel during the guilt phase of his trial following an evidentiary hearing. In reviewing a trial court's ruling after an evidentiary hearing on an ineffective assistance of counsel claim, this Court defers to the factual findings of the trial court to the extent that they are supported by competent, substantial evidence, but reviews de novo the application of the law to those facts. See Stephens v. State, 748 So.2d 1028, 1031-32 (Fla.1999).
Mungin's first subclaim is that trial counsel was ineffective for failing to sufficiently impeach the testimony of Ronald Kirkland. Specifically, Mungin argues that Cofer should have made the jury aware that Kirkland was on probation at the time of the trial and that warrants had been issued for Kirkland's arrest on violation of probation and subsequently recalled.[10]
Even if Cofer's performance was deficient because he failed to discover and use Kirkland's probationary status as impeachment evidence, Mungin has failed to establish prejudice. Cofer attacked Kirkland's identification of Mungin on cross-examination of Kirkland, and by his cross-examination of the victim of the Monticello *999 shooting and the eyewitness to the Tallahassee shooting, whose descriptions of the perpetrator were different from Kirkland's. In closing argument, Cofer argued extensively that due to these inconsistencies, Kirkland's identification could not be believed beyond a reasonable doubt. Moreover, Kirkland testified that he did not tell anyone from the State Attorney's Office that he was on probation and that he did not have any deals with the State in exchange for his testimony at Mungin's trial. Mungin does not allege that any deals were made. As for trial counsel's failure to inform the jury of the recalled warrants for Kirkland's arrest, because the warrants were not recalled until after the trial it cannot be said that counsel's performance was deficient.
Mungin also asserts that trial counsel was ineffective for failing to call Detective Christie Conn to testify regarding Kirkland's identification of Mungin in a photo spread. Specifically, Mungin asserts that according to Detective Conn's deposition testimony, Kirkland stated at the time of the identification that he could not swear in court that the man in the photograph was the same man he saw exiting the store on the day of the murder. After the evidentiary hearing, the trial court denied this claim, finding that Cofer "made a tactical decision, after discussing the possibility with Defendant, not to call Detective Conn as a witness."
Cofer testified at the evidentiary hearing that after discussing the issue with Mungin, he made a tactical decision not to call Detective Conn. Cofer stated that it was their decision that unless they had something "pretty important" to present, they wanted to try to reserve initial and final closing argument, and that on balance Kirkland admitted to most of the things that they would have used Detective Conn to impeach. Mungin argues that Cofer's asserted reason for failing to call Detective Conn is belied by the record, which shows that the defense team waived initial closing argument.
Although trial counsel ultimately waived initial closing argument, that does not demonstrate that at the time the decision was made not to call Detective Conn, trial counsel did not intend to use both the initial and final closing. Further, Cofer stated at the evidentiary hearing that the decision was part of his trial strategy, which he discussed with Mungin and to which Mungin agreed. Mungin did not testify at the hearing and therefore failed to present any evidence to rebut Cofer's testimony that Mungin was consulted about this decision.
Even assuming that counsel's performance was deficient in this regard, we conclude that Mungin has failed to establish prejudice. As noted above, trial counsel attacked Kirkland's identification of Mungin on cross-examination by bringing out the limited time he had to actually view the perpetrator and the fact that it took him fifteen to twenty minutes to pick Mungin out of the photo lineup. Cofer also brought Kirkland's identification into question by his cross-examination of the victim of the Monticello shooting and the eyewitness to the Tallahassee shooting, who gave different descriptions of the perpetrator than did Kirkland. Accordingly, our confidence in the outcome of Mungin's trial is not undermined by Cofer's failure to call Detective Conn to testify.
In his final guilt phase ineffective assistance subclaim, Mungin asserts that trial counsel was ineffective for failing to pursue an alibi defense. The trial court denied this claim, finding that Cofer's testimony that the alibi defense was inconsistent with the facts of the case and that such testimony would not have benefited Mungin was credible. The trial court concluded *1000 that Cofer's strategic decision not to pursue this defense did not result in deficient performance or prejudice. We agree. Mungin's claim that a man named "Ice" would have helped to establish his innocence is not supported by any credible evidence.
The Court has rejected ineffective assistance of counsel claims alleging a failure to present an alibi defense when counsel has investigated and made a strategic decision, supported by the record, not to present the defense. See, e.g., Reed v. State, 875 So.2d 415, 429-30 (Fla.2004) (affirming the trial court's finding that counsel was not ineffective for failing to present an alibi defense when, after an investigation, trial counsel concluded that the available testimony provided, at best, an incomplete alibi).
In this case, it appears that counsel was confused about the details of Mungin's alibi defense. However, Mungin has failed to establish prejudice. Mungin was linked to the crime by the ballistics evidence that identified the gun used in the Tallahassee and Monticello shootings, and found in Mungin's room the night he was arrested, as the same gun that was used to shoot the victim in this case. The State also presented the eyewitness testimony of Ronald Kirkland, who identified Mungin as the man he saw leaving the store. In addition, Mungin presented no evidence at the evidentiary hearing that trial counsel would have been able to locate "Ice" or any evidence connecting "Ice" to the gun. Although Edward Kimbrough and Jesse Sanders testified that they knew an individual who went by the name "Ice," Kimbrough had not seen "Ice" since the early or mid-1990s and Saunders had not seen him since 1987. Neither witness testified that he could have helped Cofer find "Ice" in 1992, and neither witness directly supported Mungin's claim that he gave "Ice" the gun.
Equally important, Mungin's other alibi witnesses do not establish that Mungin could not have committed the murder on the afternoon of September 16, 1990. The testimony of Brian Washington, who was sure that the date he drove Mungin to Jacksonville was September 16, 1990, placed Mungin in Jacksonville on the day of the shooting. Philip Levy and Vernon Longworth remembered seeing Mungin in Jacksonville on a Sunday in September but neither could remember the exact date or time. Therefore, even assuming that the day they saw Mungin was September 16, 1990, their testimony does not provide persuasive evidence that Mungin would have been unable to commit the murder between 1:30 and 2:00 that afternoon.
In light of the strong evidence linking Mungin to the crime and the weaknesses in the testimony of Mungin's alibi witnesses, we conclude that Mungin has failed to establish that he was prejudiced by Cofer's failure to follow up on his alibi defense. Cf. Torres-Arboleda v. Dugger, 636 So.2d 1321, 1325 (Fla.1994) (concluding that although counsel's failure to thoroughly investigate an alibi defense may have been deficient performance under the facts of the case, defendant failed to establish prejudice where four witnesses testified contrary to the alibi testimony offered at the evidentiary hearing and three other witnesses placed the defendant at the scene of the crime).

6. Public Defender's Conflict of Interest
In his sixth issue on appeal, Mungin asserts that his conviction and sentence should be vacated because the Public Defender's Office for the Fourth Judicial Circuit had an actual conflict of interest that it failed to disclose due to its representation *1001 of a State's witness, Ronald Kirkland, both before and during Mungin's trial. In the alternative, Mungin contends that trial counsel was ineffective for failing to investigate whether a conflict existed. After the evidentiary hearing, the trial court denied this claim, finding that no actual conflict of interest existed.
This Court has recognized that "[a]s a general rule, a public defender's office is the functional equivalent of a law firm" and that "[d]ifferent attorneys in the same public defender's office cannot represent defendants with conflicting interests." Bouie v. State, 559 So.2d 1113, 1115 (Fla. 1990). Moreover, "the right to effective assistance of counsel encompasses the right to representation free from actual conflict." Hunter v. State, 817 So.2d 786, 791 (Fla.2002). However, in order to show a violation of the right to conflict-free counsel or to establish a claim of ineffective assistance premised on an alleged conflict, the defendant must "establish that an actual conflict of interest adversely affected his lawyer's performance." Id. (quoting Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)); see also Bouie, 559 So.2d at 1115 (same). In Hunter, the Court explained that
[a] lawyer suffers from an actual conflict of interest when he or she "actively represent[s] conflicting interests." Cuyler, 446 U.S. at 350. To demonstrate an actual conflict, the defendant must identify specific evidence in the record that suggests that his or her interests were compromised. See Herring v. State, 730 So.2d 1264, 1267 (Fla.1998). A possible, speculative or merely hypothetical conflict is "insufficient to impugn a criminal conviction." Cuyler, 446 U.S. at 350. "[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." Id. If a defendant successfully demonstrates the existence of an actual conflict, the defendant must also show that this conflict had an adverse effect upon his lawyer's representation. See Strickland, 466 U.S. at 692; Cuyler, 446 U.S. at 350.
817 So.2d at 792 (parallel citations omitted) (alterations in original).
Hunter involved an allegation that an actual conflict existed because a State witness was formerly represented by the same public defender's office that represented the defendant. See id. at 791. The Court rejected the defendant's argument because trial counsel was unaware of the public defender's previous representation of the witness and did not even know about the witness's criminal background. See id. at 793. In reaching this conclusion, the Court found its prior decision in McCrae v. State, 510 So.2d 874 (Fla.1987), which involved similar facts, on point. In that case, in addition to noting that trial counsel was unaware of the public defender's representation of the witness, the Court also concluded that counsel was not required "to make inquiry into the matter in order to be considered reasonably effective and within the range of normal, professional competence." Id. at 877.
In this case, Cofer was aware of some of Kirkland's prior criminal history. However, there is nothing in the record to support a conclusion that Cofer knew that Kirkland had been represented by the Public Defender's Office for the Fourth Judicial Circuit before or during Mungin's case. Cofer testified that he could not recall whether he checked the public defender's database or whether he knew that Kirkland had been represented by the public defender's office. He also stated that if he had known about the public defender's simultaneous representation of Kirkland in 1992, he would have disclosed *1002 this information to Mungin. Cofer's testimony supports the trial court's finding that no actual conflict existed.
However, even if an actual conflict did exist, Mungin has failed to demonstrate that the conflict adversely affected Cofer's representation. See Hunter, 817 So.2d at 792 (noting that the defendant must satisfy both prongs of Cuyler to be entitled to relief). Cofer cross-examined Kirkland extensively about his identification of Mungin, and in light of the fact that Mungin has presented no evidence that Cofer knew of the public defender's representation of Kirkland, Mungin cannot establish that the alleged conflict prevented adequate cross-examination of Kirkland. See Hunter 817 So.2d at 793; Bouie, 559 So.2d at 1115.
Finally, regarding Mungin's claim that Cofer was ineffective for failing to determine that the public defender's office had represented Kirkland, this Court rejected that argument in McCrae. Accordingly, we affirm the trial court's denial of relief on this claim.

7. Ineffective Assistance of Counsel During the Penalty Phase
In his final ineffective assistance of trial counsel claim, Mungin asserts that his trial counsel was ineffective during the penalty phase for failing to present mitigation evidence that Mungin attempted suicide at the age of twelve. As with Mungin's claims of ineffective assistance of counsel during the guilt phase, he must establish both deficient performance and prejudice to be entitled to relief. With respect to mitigation this Court has recognized that "the obligation to investigate and prepare for the penalty portion of a capital case cannot be overstated." State v. Lewis, 838 So.2d 1102, 1113 (Fla. 2002). "[A]n attorney has a strict duty to conduct a reasonable investigation of a defendant's background for possible mitigating evidence." Ragsdale v. State, 798 So.2d 713, 716 (Fla.2001) (alteration in original) (quoting State v. Riechmann, 777 So.2d 342, 350 (Fla.2000)). Moreover, the United States Supreme Court recently reaffirmed the importance of a thorough investigation by defense counsel into mitigating factors. See Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). When evaluating claims that counsel was ineffective for failing to present mitigating evidence, the defendant has the burden of showing that counsel's ineffectiveness "deprived the defendant of a reliable penalty phase proceeding." Asay v. State, 769 So.2d 974, 985 (Fla.2000) (quoting Rutherford v. State, 727 So.2d 216, 223 (Fla.1998)).
With regard to deficient performance, Cofer testified that he was aware of Mungin's attempted suicide at age twelve and generally presented this type of information to the mental health expert to incorporate into his or her testimony. Dr. Krop testified at trial that in conducting his evaluation he reviewed psychiatric records from when Mungin was twelve years old. Thus, this is not a case where counsel did not investigate potential mental health mitigation. Instead, Cofer chose to submit all relevant information to the mental health expert to allow the expert to make a diagnosis. This method of presenting Mungin's mental health mitigation cannot be automatically considered deficient performance, especially given Dr. Krop's conclusion that Mungin did not suffer from any major mental illness or personality disorder. It was an informed strategic decision well within professional norms.
Even if Cofer's decision not to present evidence of Mungin's suicide attempt directly to the jury could be considered deficient performance, Mungin has failed to establish prejudice. The suicide *1003 attempt took place when Mungin was twelve years old, which was twelve years before he committed the murder at issue in this case. Mungin presented no evidence at the hearing that he had any suicidal tendencies at the time of the murder. Nor did he present any evidence to contradict Dr. Krop's testimony at trial that Mungin did not suffer from any major mental illness or personality disorder at the time of the murder. Finally, there are contradictory statements in the hospital report regarding whether Mungin took two Valium tablets to help him sleep or to attempt suicide. Thus, although the jury recommended death by a close seven-to-five vote, we conclude that Cofer's failure to present evidence of Mungin's suicide attempt to the jury did not "so affect[ ] the fairness and reliability of the proceedings that confidence in the outcome is undermined." Gore, 846 So.2d at 467.

B. PETITION FOR A WRIT OF HABEAS CORPUS

1. Ineffective Assistance of Appellate Counsel
Mungin raises two claims of ineffective assistance of appellate counsel. "The criteria for proving ineffective assistance of appellate counsel parallel the Strickland standard for ineffective trial counsel." Wilson v. Wainwright, 474 So.2d 1162, 1163 (Fla.1985). Thus, the Court must consider
first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Teffeteller v. Dugger, 734 So.2d 1009, 1027 (Fla.1999) (quoting Suarez v. Dugger, 527 So.2d 190, 192-93 (Fla.1988)). "If a legal issue `would in all probability have been found to be without merit' had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective." Rutherford v. Moore, 774 So.2d 637, 643 (Fla.2000) (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994)).
Mungin first argues that he received ineffective assistance of appellate counsel because appellate counsel failed to raise on appeal the State's introduction of hearsay testimony during the penalty phase. The State presented the testimony of Tallahassee Police Department Officer Cecil Towle regarding the facts of a prior crime that had been used in the guilt phase as Williams rule evidence.
Mungin asserts that this hearsay testimony violated his constitutional right of confrontation. To the extent Mungin relies on Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), we have recently concluded that Crawford is not retroactive. See Chandler v. Crosby, 916 So.2d 728 (Fla.2005). Moreover, Mungin did not raise a confrontation clause argument in the trial court and therefore that specific argument was not preserved for appeal. "[A]ppellate counsel cannot be ineffective for failing to raise claims which were not preserved due to trial counsel's failure to object." Johnson v. Singletary, 695 So.2d 263, 266 (Fla.1996). In addition, the use of hearsay testimony of a police officer to discuss details of a prior crime in the penalty phase does not constitute error, much less fundamental error. See generally Dufour v. State, 905 So.2d 42, 62-63 (Fla.2005) (rejecting the defendant's argument that trial counsel was ineffective for *1004 failing to object to the hearsay testimony of the attorney who prosecuted the defendant for an out-of-state murder and who summarized the testimony of the pathologist who testified in the out-of-state trial). Accordingly, counsel cannot be deemed ineffective for failing to raise this issue on appeal.
Mungin also asserts that appellate counsel was ineffective for failing to raise on appeal the State's introduction during the penalty phase of two photographs of the victim of the Tallahassee crime. The same standard for introducing testimony of a prior violent felony conviction during the penalty phase applies to photographs. See generally Lockhart v. State, 655 So.2d 69, 72-73 (Fla.1995) (applying the same standard to testimony and photographs regarding prior violent felony conviction). Thus, photographs depicting the victim of a prior violent felony committed by the defendant are admissible so long as they are relevant and the prejudicial effect of the photographs does not outweigh their probative value. See id. at 73; Duncan v. State, 619 So.2d 279, 282 (Fla.1993).
We conclude that the two photographs of the Tallahassee victim admitted in this case were relevant to show the victim and circumstances of the Tallahassee shooting, and that even if not relevant, the admission of the photographs was harmless beyond a reasonable doubt. See Dufour, 905 So.2d at 73-74. Accordingly, we deny this claim for relief.

2. Court's Prior Ruling
In the second claim raised in his habeas petition Mungin asks this Court to reconsider its ruling on direct appeal that the trial court's error in instructing the jury on both premeditated and felony murder was harmless. Since Mungin's direct appeal, this Court has reaffirmed that "[a] general verdict need not be reversed `where the general verdict could have rested upon a theory of liability without adequate evidentiary support when there was an alternative theory of guilt for which the evidence was sufficient.'" Teffeteller, 734 So.2d at 1018 (quoting Mungin, 689 So.2d at 1030). We decline to revisit this issue and deny this claim for relief.

3. Ring v. Arizona

Mungin acknowledges that this Court has repeatedly rejected claims for relief under Ring, and states that he raises the claim only to preserve it for federal review. Moreover, as the State notes, this Court has now expressly held that Ring does not apply retroactively. See Johnson v. State, 904 So.2d 400, 412 (Fla.2005). Accordingly, we deny this claim for relief.

CONCLUSION
For the reasons discussed above, we affirm the trial court's denial of Mungin's motion for postconviction relief and deny Mungin's petition for a writ of habeas corpus.
It is so ordered.
PARIENTE, C.J., and WELLS, LEWIS, CANTERO, and BELL, JJ., concur.
ANSTEAD and QUINCE, JJ., concur in result only.
NOTES
[1] Williams v. State, 110 So.2d 654 (Fla.1959).
[2] The trial court found two aggravating circumstances: (1) Mungin had previously been convicted of a felony involving the use or threat of violence to another person; and (2) Mungin committed the capital felony during a robbery or robbery attempt and committed the capital felony for pecuniary gain. See id. The trial court found no statutory mitigation and gave minimal weight to the nonstatutory mitigation that Mungin was not antisocial and could be rehabilitated. See id.
[3] These issues were: (1) whether the ial court erred in overruling a defense objection to the State's peremptory strike of an African-American prospective juror; (2) whether the evidence was insufficient to support a first-degree murder conviction; (3) whether the trial court erred in allowing the State to introduce irrelevant evidence that Mungin shot a collateral crime victim in the spine; (4) whether fundamental error occurred when a defense witness testified in the penalty phase that inmates serving life sentences are eligible for conditional release and could be released in as little as five years; (5) whether the trial court erred in instructing the jury on and in finding the aggravating circumstances of robbery and pecuniary gain; (6) whether the trial court erred in refusing to instruct the jury that Mungin's age could be considered in mitigation; (7) whether the trial court erred in failing to find and give some weight to unrebutted nonstatutory mitigation; (8) whether the death sentence is inappropriate if the Court eliminates the aggravating circumstances of robbery and pecuniary gain and considers mitigation that the trial court failed to find; and (9) whether Mungin's conviction and death sentence are unconstitutional. See id. at 1029 n. 4.
[4] Huff v. State, 622 So.2d 982, 983 (Fla.1993).
[5] Lewis Buzzel, who assisted Cofer with Mungin's case, did not testify at the hearing.
[6] These issues are: (1) whether the failure of the trial judge and the Fourth Judicial Circuit to recuse themselves from Mungin's postconviction proceedings was fundamental error; (2) whether the trial court erred in failing to conduct an in-camera inspection of exempted public records from the Duval County State Attorney's Office and the Duval County Sheriff's Office; (3) whether the trial court erred in denying Mungin's request to review Detective Gilbreath's notes of the interview with Mungin; (4) whether the trial court erred in summarily denying several of Mungin's claims of ineffective assistance of counsel; (5) whether the trial court erred in denying Mungin's claims of ineffective assistance of trial counsel during the guilt phase after an evidentiary hearing; (6) whether the trial court erred in denying Mungin's claim that the Public Defender's Office had an actual conflict of interest; and (7) whether the trial court erred in denying Mungin's claim of ineffective assistance of trial counsel during the penalty phase after an evidentiary hearing.
[7] These claims are: (1) Mungin received ineffective assistance of appellate counsel; (2) the Court should reconsider its ruling on direct appeal that the trial court's error in failing to grant Mungin's motion for judgment of acquittal on the charge of premeditated murder did not require reversal; and (3) Mungin's death sentence is unconstitutional under Ring.
[8] For all death case postconviction motions filed after October 1, 2001, Florida Rule of Criminal Procedure 3.851 requires an evidentiary hearing "on claims listed by the defendant as requiring a factual determination." Fla. R.Crim. P. 3.851(f)(5)(A)(i); see also Amendments to Fla. Rules of Criminal Procedure 3.851, 3.852, & 3.993, 802 So.2d 298, 301 (Fla.2001). However, prior to the 2001 amendments to rule 3.851, rule 3.850(d) applied to the summary denials of postconviction motions in both death and nondeath cases. See McLin v. State, 827 So.2d 948, 954 n. 3 (Fla.2002). Because Mungin's motion for postconviction relief was filed in 1998, the summary denial standard set forth in rule 3.850(d) applies in this case.
[9] Mungin admits that he raised the following claims in his postconviction motion solely to preserve them for federal review: Claim VI (failure to object to various comments and arguments by the State which diminished the jurors' sense of responsibility in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)); Claim VIII (Mungin is innocent of first-degree murder and was denied an adversarial testing); Claim IX (Mungin is innocent of the death penalty); Claim X (penalty phase instructions improperly shifted the burden to the defense to prove that death was an inappropriate sentence and trial counsel failed to object); Claim XI (jurors received inadequate guidance as to aggravating factors and Florida's statute is unconstitutionally vague); Claim XII (denial of constitutional rights and right to collateral counsel due to rules prohibiting juror interviews); Claim XIII (death sentence predicated on an automatic aggravating circumstance of commission of murder during the course of a felony); Claim XV (Mungin is insane to be executed); and Claim XVII (electrocution and lethal injection are unconstitutional and violative of principles of international law). We agree that the trial court did not err in summarily denying relief on these claims.
[10] In the alternative, Mungin asserts that the State violated Brady by failing to disclose Kirkland's probation status as well as the recalled warrants. The trial court refused to address this claim because it was raised not in Mungin's consolidated amended motion for postconviction relief, but as a supplemental claim filed on the day of the evidentiary hearing. Despite the trial court's ruling, both Cofer and Kirkland were asked about these events at the evidentiary hearing and there was no evidence presented to support a finding that the State knew about Kirkland's probationary status or warrants. Kirkland testified that he did not disclose his probation to anyone at the State Attorney's Office and was unaware that a warrant for violation of probation had even been issued. Cofer testified that neither the State Attorney's Office nor the Public Defender's Office is involved in obtaining a warrant for violation of probation. Moreover, the warrants were recalled in February 1993, after Mungin's trial. The State could not suppress information that was not available.