# Supreme Court of Florida

_____

No. SC2023-1476
_____

**MESAC DAMAS,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC2024-0565
_____

**MESAC DAMAS,**
Petitioner,

vs.

**SECRETARY, DEPARTMENT OF CORRECTIONS,**
Respondent.

October 1, 2025
**<u>CORRECTED OPINION</u>**

COURIEL, J.

Mesac Damas, whose convictions and sentences of death we

upheld in 2018, appeals an order of the circuit court denying his

initial motion for postconviction relief under Florida Rule of Criminal Procedure 3.851. Damas raises three issues that he contends require reversal. Damas also petitions the Court for a writ of habeas corpus. We have jurisdiction. *See* art. V, § 3(b)(1), (9), Fla. Const. We affirm the circuit court's denial of postconviction relief and deny the habeas corpus petition.

**I**

Twice now we have had to tell this woeful tale. *See Damas v. State*, 260 So. 3d 200, 202-12 (Fla. 2018). In 2009, after years of threats, domestic violence, and litigation, Damas killed his wife and five children—ages nine, six, five, three, and not quite two—by cutting their throats with a fillet knife. He fled to Haiti. Apprehended shortly after arrival at the airport in Port-au-Prince, he confessed to the murders, which he attributed to "bad spirits" and voodoo spells cast upon him by his mother-in-law. *Id.* at 207. He told an agent that, having killed their mother, he decided not to spare his children because they would have been entrusted to his mother-in-law's custody. *Id.* He pled guilty, waived his right to a penalty-phase jury, and waived his right to present evidence in mitigation.

Most of the questions we must decide in this appeal turn on the extensive proceedings about Damas's competency to stand trial and the mitigation investigations carried out by his defense team. In summary, as the circuit court observed, the defendant was represented in the trial proceedings by a total of five attorneys, each of whom testified at a postconviction evidentiary hearing about his or her observations touching on Damas's competency and the work done to develop evidence in mitigation. At that hearing, each attorney testified that he or she knew Damas's history of competency evaluations: he was found competent to proceed after an initial set of evaluations, incompetent after a second, restored to competency after a third, and still competent at the time of a fourth. We summarize this history, and Damas's counsel's role in it, below.

**A**

Following Damas's first appearance on September 23, 2009, on the motion of defense counsel, the trial court ordered Dr. Paul Kling, a psychologist, to examine Damas and report on his competency. A year later, again upon defense's motion, the trial court appointed three experts to evaluate Damas: Dr. Robert Silver evaluated Damas on October 20, 2010; Dr. Michael Herkov on

- 3 -

December 21, 2010; and Dr. Frederick Schaerf on January 21 and June 9, 2011.

On June 16, 2011, the trial court held a competency hearing. The court reviewed reports from Drs. Silver, Herkov, and Schaerf, heard their testimony, and observed Damas during the hearing. These experts recounted difficulties in communicating with Damas, especially his refusal to answer questions related to his criminal proceedings and his fixation on biblical and religious themes. The Court found Damas competent to proceed, noting that having a mental illness or displaying bizarre behavior is not equivalent to incompetence under section 916.12, Florida Statutes, or Florida Rule of Criminal Procedure 3.211.

In 2012 and 2013, Damas's mental status and communication abilities deteriorated. Defense counsel addressed the issue with the court. After reviewing Dr. Herkov's and Dr. Schaerf's reevaluations of Damas, the court issued an order on March 19, 2014, finding Damas incompetent to proceed and committed him to a treatment facility of the Department of Children and Families pursuant to sections 916.13(1) and (2), Florida Statutes (2014).

On April 28, 2014, pursuant to Florida Rule of Criminal Procedure 3.212, the treatment facility notified the court that Damas had regained competence to proceed and no longer met the criteria for commitment.[1]  A report by Dr. Ali Mandelblatt was filed together with the facility's notification, which characterized Damas's behavior as malingering and cautioned future evaluators to avoid equating Damas's unwillingness to cooperate with incompetence to proceed.  After Damas was discharged and returned to prison, the court ordered Drs. Herkov and Schaerf to evaluate him again.

On October 8, 2014, the trial court held another competency hearing.  In addition to Dr. Mandelblatt's report, the court reviewed reports from Drs. Herkov and Schaerf.  At the hearing, the parties stipulated to the court making a competency decision based on the written expert reports, rather than on the basis of live testimony.  In

---

1.  Florida Rule of Criminal Procedure 3.212(c)(6) requires a treatment facility to admit a defendant determined to be incompetent by the court, report to the court on the defendant's competency no later than sixty days from admission, and notify the court if the facility administrator determines that the defendant has regained competency or no longer meets the criteria for commitment during the sixty-day period or any period of extended commitment.

a colloquy with the court and counsel for the State, Damas's lead lawyer, Ms. Kathleen Fitzgeorge, stated that, upon review of the reports, the defense had no objection to their findings and would agree Damas was competent to stand trial at that time. And so, on October 20, 2014, the trial court issued an order finding Damas competent to proceed.[2]

Damas indicated that he wanted to represent himself, so on July 21, 2017, the trial court conducted a *Faretta*[3] hearing. Damas refused to answer the court's questions, repeatedly stating that he did not want a trial and wanted to plead guilty. Without Damas's cooperation, the court found it impossible to adequately conduct the *Faretta* inquiry and to discern whether Damas's waiver of

---

2. At the postconviction hearing, Ms. Fitzgeorge testified to the defense's communication with Damas and decision not to challenge the expert reports. According to Ms. Fitzgeorge, the defense team was confident that Damas clearly understood what they were doing, why they were doing it, and what role they played, and everybody was on board to proceed to trial, relying on the doctors' reports.

3. *Faretta v. California*, 422 U.S. 806, 835 (1975) ("[In order to represent himself, a defendant] should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." (citation and internal quotation marks omitted)).

counsel was knowing and voluntary. The trial court denied Damas's request for self-representation.

Because Damas indicated his desire to enter a guilty plea, the trial court ordered another round of evaluations of his competency by Drs. Herkov and Kling. On August 18, 2017, the court issued a fourth competency order, finding Damas competent to proceed.

On September 5, 2017, Damas pled guilty to six counts of first-degree premeditated murder, waived his right to a penalty-phase jury, and waived his right to present evidence in mitigation. On direct appeal, we reviewed Damas's guilty plea *sua sponte* and concluded that "the extensive colloquy conducted by the trial court and Damas's responses to the questions asked demonstrate that his guilty pleas were knowing, intelligent, and voluntary." *Damas*, 260 So. 3d at 216.

**B**

The work of Damas's lawyers to establish facts in mitigation is also at issue. At the postconviction hearing, witnesses testified that those efforts started early, focusing on Damas's mental health and social and cultural background, and continued even after Damas waived mitigation. Between September 2009 and March 11, 2015,

the Collier County Public Defender's office represented Damas. The public defenders retained a team of mitigation specialists, mental health experts, and cultural specialists to investigate Damas's mitigating circumstances. Donna Murray, a mitigation specialist, coordinated communications with the experts; interviewed Damas's family members and former coworkers; gathered his school, employment, and medical records; searched for potential witnesses to testify to various facts; and compiled an investigative report of Damas's social history. Upon withdrawing from the case, the public defenders handed Damas's case file to their successor counsel, together with a confidential memorandum containing information about the experts, potential mitigating factors, and documents required to establish mitigation.

After March 13, 2015, Damas was represented by two court-appointed attorneys, Mr. Kevin Shirley and Mr. James Ermacora, who reviewed the memorandum with Damas's former counsel and continued to build Damas's mitigation based on the work already done by the public defenders.

To develop facts in mitigation regarding Damas's mental health, the defense retained Dr. Robert Ouaou, a

neuropsychologist, in March 2017[4] to evaluate Damas for brain damage and neurocognitive vulnerability that could be evidenced by additional neurological testing. The defense also retained Dr. Mark Rubino, a neurologist, to evaluate Damas's head injuries incurred from a car accident and how they could have affected his behavior. On August 30, 2017, the defense requested funding for additional, more advanced Magnetic Resonance Imaging (MRI) and Positron Emission Tomography (PET) scans to address Damas's brain abnormalities, as well as travel expenses and witness fees for Dr. Joseph Wu, M.D., to testify at the sentencing. After Damas pled guilty on September 5, 2017, and waived his right to present mitigation evidence, the trial court denied that request.

The defense retained Dr. Elizabeth McAlister, a specialist in Haitian culture and religion, to help examine the impact of Haitian religion, political history, and migration on Damas. Dr. McAlister testified at the postconviction hearing that she went to Haiti with

---

4. Between September 2015 and March 2017, Damas's case was stayed for over eighteen months pending the determination of *Hurst v. Florida*, 577 U.S. 92 (2016), and *Hurst v. State*, 202 So. 3d 40 (Fla. 2016).

mitigation specialist Donna Murray in June 2017 to collect information about Damas's family life and religious history.

The defense team continued to work on Damas's mitigation after his guilty plea. Mr. Ermacora testified at the postconviction hearing:

> [Damas's guilty plea and waiver of mitigation] didn't give us any concerns about mitigation. It's obvious that we kept working on mitigation because they were still bringing motions and trying to get further testing done. So we hadn't given up, we didn't just throw up our hands and say he is going to plead guilty, he doesn't want any mitigation, let's just stop here—and in fact—we did present some mitigation evidence at the *Spencer* [*v. State*, 615 So. 2d 688 (Fla. 1993)] hearing, despite the fact that he didn't want us to.

Eventually, the defense developed forty-seven different mitigation factors for the penalty phase.

At the sentencing hearing, the defense presented mitigating evidence of Damas's mental status and social and cultural background. Dr. Rubino testified about the car accident Damas suffered in 2009, the MRI and PET scans performed on him in 2014, the abnormalities in his brain revealed by the scans, and their possible impact on his behavior. On the basis of her findings in Haiti, Dr. McAlister testified that Damas's "fear of sorcery and

malevolent magic played a huge role in his behavior." *Damas*, 260 So. 3d at 210.

On October 27, 2017, having considered all the evidence, the trial court imposed six sentences of death on Damas for the murders of his wife and five children. The court found five aggravators proven by the State beyond a reasonable doubt: prior violent felony for all six victims; that the murders were committed in a cold, calculated, and premeditated manner for all six victims; that, with respect to the five children, the victims were less than twelve years of age and under the defendant's familial/custodial authority; and that, as to three victims, the murders were committed in a manner that was especially heinous, atrocious, or cruel. The court afforded each aggravator great weight.

Based on the mitigating circumstances presented by the defense, the trial court found twelve mitigating factors, including a history of mental illness (some weight, but noting that nothing in the record supports a long and well-documented history of mental illness before the murders); lack of treatment for his mental illness (some weight, but finding it was more likely than not that Damas malingered during evaluations in order to be found incompetent);

prior involvement in the Haitian Baptist Church (some weight together with other factors); and the failure of the Department of Children and Families and the David Lawrence Center to recognize his mental health issues and provide him with services (little weight, and citing previous findings with respect to Damas's alleged mental illnesses).

## II

Damas appealed his convictions and sentences to this Court, raising three claims: (1) the trial court abused its discretion by denying him his Sixth Amendment right to represent himself; (2) the trial court fundamentally erred by doubling two aggravators that were both based on the child victims' age; and (3) the death penalty is inherently cruel and unusual. This Court rejected all three claims and affirmed Damas's convictions and sentences. *Damas*, 260 So. 3d at 218.

On March 20, 2020, Damas filed his initial Motion to Vacate Judgments of Convictions and Sentences (Initial 3.851 Motion) with special request for leave to amend. On the same day, he filed a Motion for Determination of Competency. Thereafter, the trial court appointed two mental health experts, Drs. Julie Harper and Donald

McMurray, to evaluate him. Because Damas refused visits by the experts, the evaluations had to be based on records review and interviews with correctional officers and defense counsel. Both experts opined that Damas was competent to proceed. The court found Damas competent and his refusal to communicate with the court and counsel a deliberate and intentional attempt to frustrate the proceedings.

On August 16, 2021, Damas amended his initial 3.851 motion, raising four claims: (1) ineffective assistance of counsel for failing to challenge competency and request an additional competency evaluation prior to the *Koon*[5]/*Spencer* hearing; (2) ineffective assistance of counsel for failing to conduct a timely and adequate mitigation investigation; (3) the constitutionality of section 119.19, Florida Statutes, and Florida Rule of Criminal Procedure 3.852 in restricting defendant's access to public records; and (4) ineffective assistance of postconviction counsel due to the COVID-19 pandemic.

---

5. *Koon v. Dugger*, 619 So. 2d 246 (Fla. 1993).

The circuit court denied Damas's amended motion on all claims after conducting an evidentiary hearing. This appeal, and petition for writ of habeas corpus, follow.

## III

Damas raises three issues on appeal, two of which involve the ineffective assistance of counsel: (1) Damas's convictions and sentences are unconstitutional because he was incompetent at each stage of the proceedings, and his lawyers were ineffective in failing to expose it; (2) trial counsel was ineffective for failing to conduct a timely and adequate mitigation investigation; and (3) Damas was denied access to public records in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. None of these issues provide a basis for relief.

## A

First, Damas contends that his mental illness rendered him incompetent to proceed during the trial, sentencing, and postconviction proceedings, but that his incompetency was never established because of his lawyers' ineffective assistance. We reject this contention.

**1**

To the extent that Damas's argument is really about his competency, and not about his lawyers' work, it is procedurally barred. "This Court has many times held that postconviction proceedings are not to be used as a second appeal, and that claims that were or could have been raised on direct appeal are procedurally barred in postconviction." *Barnes v. State*, 124 So. 3d 904, 912 (Fla. 2013); *Reynolds v. State*, 373 So. 3d 1124, 1126 (Fla. 2023) ("[A] postconviction litigant is barred from bringing any claims that could have been raised in prior litigation." (citing *Barwick v. State*, 361 So. 3d 785, 795 (Fla. 2023))).

In particular, a competency claim may not be raised in a postconviction motion. *Dougherty v. State*, 149 So. 3d 672, 676 (Fla. 2014) ("In Florida state courts, neither a procedural nor a substantive competency claim of trial court error may be raised in a postconviction motion." (citing *Thompson v. State*, 88 So. 3d 312, 316 (Fla. 4th DCA 2012))); *Wickham v. State*, 124 So. 3d 841, 861-62 (Fla. 2013) (holding that the defendant's competency claims were procedurally barred because they were not raised on direct appeal (citing *Nelson v. State*, 43 So. 3d 20, 33 (Fla. 2010))); *Carroll v.*

- 15 -

*State*, 815 So. 2d 601, 610 (Fla. 2002) ("[The defendant's] underlying claim that he was incompetent to stand trial should have been raised on direct appeal and therefore is procedurally barred.").

Damas could have challenged the trial court's determination of his competency on direct appeal, but he did not. On the contrary, he contended on direct appeal that the trial court erroneously declined his request for self-representation. *Damas*, 260 So. 3d at 212. As we have held, "[t]he *Dusky* [*v. United States*, 362 U.S. 402 (1960)] standard [to stand trial] is the same standard of competence required to plead guilty or to waive the right to assistance of counsel." *Noetzel v. State*, 328 So. 3d 933, 946 (Fla. 2021) (citing *Godinez v. Moran*, 509 U.S. 389, 391, 398, 402 (1993)); *see also Woodbury v. State*, 320 So. 3d 631, 646 (Fla. 2021); *Dusky*, 362 U.S. at 402. Both standards test whether a defendant has the sufficient present ability to understand the proceedings against him and to make reasoned choices among the available alternatives. *See Godinez*, 509 U.S. at 397-400. On direct appeal, Damas claimed that he had answered every question the court asked and acknowledged the severity of the charges against him, the

maximum penalty, and the benefits of having counsel's assistance, but the trial court impermissibly refused to honor his knowing and intelligent choice to represent himself. Now he denies having ever been competent. The procedural bar stops just such a change in course.

In any event, the trial court applied the appropriate legal standard in concluding that Damas was competent to proceed. That is, the court determined that Damas had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402; *see Peede v. State*, 955 So. 2d 480, 488 (Fla. 2007) (holding that the *Dusky* standard is the test for whether a defendant is competent to stand trial). The *Dusky* standard was codified in section 916.12, Florida Statutes, and Florida Rule of Criminal Procedure 3.211, which enumerate the criteria to determine a defendant's capacity to proceed. *See* § 916.12(1), (3), Fla. Stat. (2017); Fla. R. Crim. P. 3.211(a)(1), (2); *Carter v. State*, 706 So. 2d 873, 875 (Fla. 1997) ("Florida Rule of Criminal Procedure 3.211(a)(1) codifies what is known as the *Dusky* standard of

competence . . . .").  Florida Rules of Criminal Procedure 3.210 to 3.212 also set forth the procedures for a trial court to determine whether a defendant is competent to proceed or has been restored to competency.  *See Carter,* 706 So. 2d at 875; *Dougherty,* 149 So. 3d at 677.

**2**

Damas's claim of ineffective assistance of counsel with respect to his competency proceedings fails, too.  To prevail on a claim of ineffective assistance of counsel, a defendant must prove: (1) counsel's performance was deficient, and (2) the deficiency prejudiced the defense.  *See Strickland v. Washington,* 466 U.S. 668, 687 (1984); *Smith v. State,* 330 So. 3d 867, 875 (Fla. 2021). The *Strickland* test requires both the deficiency and the prejudice prongs to be satisfied for an ineffective assistance of counsel claim to survive.  *See Martin v. State,* 311 So. 3d 778, 792 (Fla. 2020) ("Because *Strickland* requires a defendant to establish both prongs, if one prong is not met, the court is not required to analyze whether the defendant has established the other prong." (citation and internal quotation marks omitted)).  "Because both prongs of the *Strickland* test present mixed questions of law and fact, this Court

employs a mixed standard of review, deferring to the circuit court's factual findings that are supported by competent, substantial evidence, but reviewing the circuit court's legal conclusions de novo." *Davis v. State*, 383 So. 3d 717, 733 (Fla. 2024) (quoting *Sheppard v. State*, 338 So. 3d 803, 816 (Fla. 2022)).

Damas claims that his trial counsel improperly stipulated to his competency at competency hearings. But that allegation is simply not true. The circuit court noted that at the hearings on October 8, 2014, and August 18, 2017, defense counsel did not stipulate to Damas's competency, but only to the admission of the expert reports finding Damas competent. In *Dougherty*, we held that where the parties and the judge agree, the trial court may decide the issue of competency on the basis of written expert reports alone, but a defendant cannot stipulate that he is competent, especially where he has been previously adjudicated incompetent in the same criminal proceedings. 149 So. 3d at 678. Here, the trial court did not abuse its discretion in admitting the expert reports based on the parties' agreement and then entering an independent order finding Damas competent to proceed.

Damas blames his counsel for failing to request additional competency evaluations prior to his guilty plea and the sentencing hearing. But the record reflects that his counsel had reason to believe and represent to the court that their client was competent to proceed. And due to Damas's lack of cooperation, requesting more competency evaluations would have been futile.

As Damas's counsel testified at the postconviction hearing, they no longer had particular concerns about his competency to proceed after he was released from the treatment facility. Counsel believed that Damas was able to understand the legal process and the rights he was willing to waive, even though he showed little interest in cooperating with his lawyers, the experts, or the court. And counsel testified that they had no good faith basis to challenge the experts' evaluations. *See Nixon v. State*, 932 So. 2d 1009, 1020 (Fla. 2006) ("When there is no reason to suspect that a defendant is incompetent, it cannot be deficient performance if counsel does not request a competency examination."); *Boyd v. State*, 910 So. 2d 167, 187 (Fla. 2005) (holding that once a defendant is determined competent to stand trial, a presumption of competence attaches to the defendant in later proceedings; another competency hearing is

required only if a bona fide question as to the defendant's competency has been raised).

Counsel also testified about Damas's refusal to cooperate with the attorneys and experts alike—he had no interest in assisting the defense team or taking an active part in his defense. Given Damas's lack of cooperation, ordering further evaluations would have been futile—he refused to meet with the experts or answer their questions. *See Smith v. State*, 310 So. 3d 366, 373 (Fla. 2020) (holding that defendant's lack of cooperation at the penalty phase undermined his allegations of ineffective assistance of counsel (citing *Brown v. State*, 894 So. 2d 137, 147 (Fla. 2004))); *Cherry v. State*, 781 So. 2d 1040, 1052 (Fla. 2000) (finding no deficient performance by counsel because the alleged missing information was due to the defendant's lack to cooperation); *cf. Sims v. State*, 602 So. 2d 1253, 1257-58 (Fla. 1992) ("[W]e do not believe counsel can be considered ineffective for honoring the client's wishes."). Because Damas fails the *Strickland* deficiency prong, we need not consider the prejudice prong. *See Martin*, 311 So. 3d at 792.

**B**

Damas next contends that he has received ineffective assistance of counsel because his trial counsel failed to conduct a timely and adequate mitigation investigation, as a result of which substantial mitigation evidence was never developed or presented to the court. Specifically, Damas argues that after the Public Defender's Office withdrew from representation, the two court-appointed attorneys, Mr. Shirley and Mr. Ermacora, failed to build on the mitigation investigations already developed by the public defenders. Damas alleged that they failed to follow up on the potential leads for additional mitigation, work diligently with the mental health and cultural experts retained by the public defenders, or adequately prepare the experts to testify at the sentencing hearing.

The circuit court correctly found that counsel's performance was not deficient. We have emphasized that in capital cases, "an attorney has a strict duty to conduct a reasonable investigation of a defendant's background for possible mitigating evidence," and counsel's obligation to investigate and prepare for the penalty portion of a capital case cannot be overstated. *Valentine v. State*,

98 So. 3d 44, 53 (Fla. 2012) (quoting *State v. Riechmann*, 777 So. 2d 342, 350 (Fla. 2000)). But at the same time, we have also recognized that the reasonableness of counsel's performance may be determined or substantially influenced by the defendant's own statements or actions: "[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Foster v. State*, 132 So. 3d 40, 60 (Fla. 2013) (emphasis omitted) (quoting *Strickland*, 466 U.S. at 691); *see also Rodriguez v. State*, 919 So. 2d 1252, 1263 (Fla. 2005) (finding defendant's lack of cooperation limited counsel's performance, undermining his allegations of ineffective assistance of counsel); *Cherry*, 781 So. 2d at 1052 (finding no ineffective assistance of counsel when defendant refused to supply names of witnesses who would have testified on his behalf); *Rose v. State*, 617 So. 2d 291, 294-95 (Fla. 1993) (finding counsel was not ineffective for failing to contact defendant's family members to testify because defendant indicated to counsel his family would not be helpful).

Here, competent, substantial evidence shows that both the public defenders and the private attorneys worked diligently to investigate Damas's mitigation background and effectively present it to the sentencing court. Defense counsel worked with a team of specialists, consultants, and experts to investigate Damas's mental health and cultural background as mitigating circumstances. The mitigation specialist, Ms. Murray, and the cultural expert, Dr. McAlister, went to Haiti to collect mitigating evidence.

After the public defenders withdrew from representation, Mr. Ermacora and Mr. Shirley continued to work with the mitigation specialist retained by their predecessor and kept building Damas's mitigation background. Both the public defenders and the private attorneys testified at the postconviction hearing that Damas was a difficult client to represent because, most of the time, he refused to discuss his case with counsel and refused to be interviewed by the mental health experts. Despite Damas's obstruction and waiver of mitigation presentation, the defense still managed to develop a full picture—forty-seven mitigating factors—of his mental status and familial, social, and cultural background and present it to the sentencing court.

Damas argues that Mr. Shirley and Mr. Ermacora unreasonably believed that they should wait until after the guilt phase to conduct a full mitigation investigation and thus missed the opportunity to talk with Damas and move for leave to conduct additional tests. Damas's allegations have little support in the record. As the witnesses testified at the postconviction hearing, Mr. Shirley and Mr. Ermacora started working on Damas's mitigation as soon as they were appointed in March 2015. Mr. Ermacora testified that they did not order the additional tests suggested by Dr. Wu immediately because they expected a longer guilt phase, and the tests might be unnecessary if Damas were found not guilty. Damas's sudden plea of guilty disrupted the plan of his defense. Furthermore, it is well settled that the timing and scope of the mitigation investigation fell within counsel's sound trial strategy, which cannot be the basis of deficient performance. *See Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000) ("[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." (citing *Rutherford v. State*, 727 So. 2d 216, 223 (Fla. 1998); *State v.*

- 25 -

*Bolender*, 503 So. 2d 1247, 1250 (Fla. 1987))). Therefore, defense counsel's decision to delay the additional tests until after the guilt phase does not constitute deficient performance.

Damas also fails to show prejudice. The trial court acknowledged and accorded proper weight to twelve mitigators presented by the defense, including Damas's mental wellness, which he claims hasn't been sufficiently tested. There is no reasonable probability that the totality of Damas's mitigating circumstances could have overcome the substantial and weighty aggravators against him.

The circuit court did not err in denying Damas's ineffective assistance of counsel claim.

## C

In his last claim on appeal, Damas contends that the circuit court's denial of his public records requests under chapter 119, Florida Statutes, and Florida Rule of Criminal Procedure 3.852(g) and (i) violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the

corresponding Florida law.[6] Damas concedes that this claim is being presented for preservation purposes only.

We review a circuit court's denial of requests for public records for abuse of discretion. *See Tanzi v. State*, 407 So. 3d 385, 391 (Fla.), *cert. denied*, 145 S. Ct. 1914 (2025). We have repeatedly held that rule 3.852 does not authorize a fishing expedition for records unrelated to a colorable claim for postconviction relief. *See id.* (citing *Cole v. State*, 392 So. 3d 1054, 1066 (Fla. 2024)); *see also Sims v. State*, 753 So. 2d 66, 70 (Fla. 2000); *Asay v. State*, 224 So. 3d 695, 700 (Fla. 2017) ("[W]here a defendant cannot demonstrate that he or she is entitled to relief on a claim or that records are relevant or may reasonably lead to the discovery of admissible evidence, the trial court may properly deny a records request." (citation omitted)); *Valle v. State*, 70 So. 3d 530, 547-49 (Fla. 2011)

---

6. Damas requested additional public records from eight state agencies under rule 3.852(g): Office of the State Attorney, Department of Corrections, Florida Department of Law Enforcement, Collier County Sheriff's Office, Miami-Dade Police Department, Miami-Dade Aviation Department, Department of Children and Families, and the Medical Examiner. He requested additional public records from five state agencies under rule 3.852(i): North Collier Fire and Rescue District, Florida Department of Health, Florida Department of State Division of Elections, Judicial Qualifications Commission, and Collier County EMS.

("The circuit court has the discretion to deny public records requests that are 'overly broad, of questionable relevance, and unlikely to lead to discoverable evidence.' " (quoting *Moore v. State*, 820 So. 2d 199, 204 (Fla. 2002))).

Here, the circuit court found that Damas failed to show any specific records relevant to a specified claim for postconviction relief or a subject matter of the postconviction proceedings. Instead, he was "seeking to discover if possible claims exist, rather than records to support a colorable claim for postconviction relief." We find the court's reasons for denial adequate and proper. The circuit court did not abuse its discretion in denying Damas's requests. Likewise, we reject his categorical allegation that denying him access to these records violated his rights to due process and access to the courts. *See Heath v. State*, 3 So. 3d 1017, 1029 n.8 (Fla. 2009) ("Vague and conclusory allegations on appeal are insufficient to warrant relief." (citing *Doorbal v. State*, 983 So. 2d 464, 482 (Fla. 2008))).

**IV**

Damas also petitions for a writ of habeas corpus on the grounds of ineffective assistance of appellate counsel. Damas raises three claims: his appellate counsel rendered ineffective

assistance by failing to (1) challenge the sentencing court's improper use of expert competency reports to sentence him to death; (2) seek appellate review of the sentencing court's denial of additional expert funding and tests; and (3) make necessary and outcome-determinative arguments to challenge the trial court's denial of his right to represent himself.

Damas's petition fails for multiple reasons. "Habeas petitions are the proper vehicle to advance claims of ineffective assistance of appellate counsel." *Rutherford v. Moore*, 774 So. 2d 637, 643 (Fla. 2000) (citation omitted). And as is true in the rule 3.851 context, "[t]he criteria for proving ineffective assistance of appellate counsel parallel the *Strickland* standard for ineffective trial counsel." *Knight v. State*, 225 So. 3d 661, 681 (Fla. 2017) (alteration in original) (quoting *Mungin v. State*, 932 So. 2d 986, 1003 (Fla. 2006)). Thus, the Court must consider whether the alleged actions or omissions of counsel fell below the objective standard of reasonableness and whether such deficiency by counsel compromised the appellate process to such a degree as to undermine confidence in the correctness of the result. *Id.* (quoting *Mungin*, 932 So. 2d at 1003).

In his first claim, Damas faults his appellate counsel for failing to challenge on direct appeal the trial court's allegedly improper use of expert competency reports, especially the one issued by Dr. Mandelblatt, to sentence him to death. This claim is meritless because, as we have repeatedly held, appellate counsel may not be deemed ineffective for failing to challenge an unpreserved error on direct appeal, unless such a claim rises to the level of fundamental error. *See Hendrix v. State*, 908 So. 2d 412, 426 (Fla. 2005) (citing *Rutherford*, 774 So. 2d at 646).

Here, the alleged error—the trial court's reference to the expert competency reports in its sentencing order—was not preserved for appellate review, and would not have risen to the level of fundamental error, given Damas's waivers of a penalty-phase jury and mitigation and the gravity of the established aggravators. *See Smiley v. State*, 295 So. 3d 156, 172 (Fla. 2020) ("Objected-to comments are reviewed for harmless error, and unobjected-to comments for fundamental error. Fundamental error is error that reaches down into the validity of the trial itself to the extent that the jury's recommendation of death could not have been obtained without the assistance of the alleged error." (citing *Card v. State*,

803 So. 2d 613, 622 (Fla. 2001))). To the extent Damas is trying to relitigate the issue of his competency in his habeas petition, we have said that he cannot. *See State v. Murray*, 262 So. 3d 26, 45 (Fla. 2018) (prohibiting the use of ineffective assistance of appellate counsel claims to relitigate issues presented on direct appeal or in a postconviction motion (citing *Rutherford*, 774 So. 2d at 643)).

In his second claim, Damas complains that his appellate counsel failed to challenge the trial court's denial of funding for additional MRI and PET scans and for Dr. Wu to travel to Florida to testify at the sentencing hearing. This claim is also meritless.

We have held that appellate counsel cannot be deemed ineffective for failing to raise an issue on direct appeal that would, in all probability, have been found to be without merit. *See Rutherford*, 774 So. 2d at 643 (quoting *Williamson v. Dugger*, 651 So. 2d 84, 86 (Fla. 1994)). Here, the record reveals that the trial court denied funding for additional tests because Damas had knowingly and intelligently waived mitigation, and the original testing had provided sufficient information on the effect of the car accident on his mental wellness. In its sentencing order, the trial court duly considered Damas's mental illness as possibly caused by

the brain damage incurred in the accident and afforded it some weight. The court soundly exercised its discretion to refuse the funding for extra tests and experts. *See San Martin v. State*, 705 So. 2d 1337, 1347 (Fla. 1997) ("A trial court's refusal to provide funds for the appointment of experts for an indigent defendant will not be disturbed unless there has been an abuse of discretion." (citing *Martin v. State*, 455 So. 2d 370, 372 (Fla. 1984))). Appellate counsel was not ineffective for failing to raise a meritless claim on direct appeal. And again, ineffective assistance of appellate counsel is not a panacea for claims already litigated on direct appeal or a postconviction relief.

As to his third claim, Damas already challenged the trial court's denial of his request for self-representation on direct appeal, and we affirmed. Damas cannot now relitigate the issue under the guise of an ineffective assistance of appellate counsel claim.

Because his claims are procedurally barred and meritless, Damas is not entitled to habeas relief on the basis of ineffective assistance of appellate counsel.

# V

For all these reasons, we affirm the circuit court's denial of postconviction relief and deny the petition for habeas corpus relief.

It is so ordered.

MUÑIZ, C.J., and CANADY, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
LABARGA, J., concurs specially with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., specially concurring.

I concur with the majority in its determination that Damas's postconviction and habeas claims do not warrant relief. Particularly, I agree that what appears to be a merits-based challenge to Damas's competency is procedurally barred. Yet, I note that the review of Damas's competency-related ineffective assistance of counsel claim benefits from the detailed record of competency proceedings undertaken in this case.

The record reveals that defense counsel, the circuit court, the State, and mental health experts treated the issue of Damas's competency with the serious consideration required under Florida Rules of Criminal Procedure 3.210, 3.211, and 3.212. During the

- 33 -

eight years between Damas's arrest in 2009 and his sentencing in 2017, he was evaluated for competency twelve times by five different mental health experts. The circuit court rendered orders on Damas's competency in 2011, twice in 2014, and again in 2017.

After competency proceedings resulted in a finding of competency in 2011, Damas was in fact committed to a treatment facility following the circuit court's finding in early 2014 that he was incompetent to proceed due to a major mental illness. Damas was later discharged. Upon reevaluation, experts determined that Damas did not suffer from a major mental illness that would interfere with his competency, and the circuit court found Damas competent to proceed. Damas was evaluated for competency again in 2017 and, in August 2017, the month before entering his guilty pleas, the trial court again found Damas competent to proceed.

The record also demonstrates that Damas was persistently uncooperative and contains multiple expert conclusions that Damas was malingering. These factors naturally informed defense counsel's strategy with respect to any suggested issue involving Damas's competency, and they undermine Damas's argument that counsel's performance was deficient. Moreover, the record belies

any conclusion of prejudice, i.e., that Damas was proceeded against while incompetent.

An Appeal from the Circuit Court in and for Collier County,
    Ramiro Manalich, Judge – Case No. 112009CF002298AXXXXX
And an Original Proceeding – Habeas Corpus

Suzanne Keffer, Capital Collateral Regional Counsel, James L. Driscoll, Jr., Assistant Capital Collateral Regional Counsel, and Michael T. Cookson, Staff Attorney, Capital Collateral Regional Counsel, Southern Region, Fort Lauderdale, Florida,

    for Appellant/Petitioner

James Uthmeier, Attorney General, Tallahassee, Florida, and Timothy A. Freeland, Senior Assistant Attorney General, Tampa, Florida,

    for Appellee/Respondent